JOHN MOORE, DAVID MOORE, AND WILLIAM H. MOORE, *appellants, v.* THE ESTATE OF RICHARD MOORE, DECEASED.

## Descent.

The Legislature by a special act provided that A. should be heir-at-law of S., "in as full and perfect a manner as if she had been the latter's daughter, born in lawful wedlock." S. died before A. *Held*, that A. did not by virtue of this act become entitled to any share in the estate of a brother of S., who died intestate after S., and from whom S., if she had been living, would have inherited.

APPEAL from the decree of the probate court ordering distribution of the estate of Richard Moore, deceased. Richard Moore, being the owner of certain estate situate in this state, died intestate, leaving no issue nor widow nor father nor mother nor lineal heir. The appellants were his only surviving brothers. Sally Dunbar, wife of John B. Dunbar, of Swanton, was his only sister. She died before the intestate, April 12th, 1859, without issue born of her body. In 1849, the legislature passed the following enactment :

" SEC. 3. Amanda M. Pennock, of Swanton, in the county of Franklin, shall hereafter be known and called by the name of Amanda Melissa Dunbar, and she is hereby constituted heir-at-law of John B. and Sally Dunbar, of said Swanton, in as full and perfect a manner as if she had been the daughter of the said John B. and Sally Dunbar, born in lawful wedlock.

" SEC. 4. Section 3 of this act shall not take effect until the said Amanda M. Pennock, and the said John B. and Sally Dunbar, shall have made their assent thereto, in writing, under their hands and seals, in the presence of two witnesses, and caused the same to be recorded in the town clerk's office in the town of Swanton." See Acts of 1849, No. 99, p. 145.

The conditions named in the fourth section of this act were fully complied with, and the said Amanda M. Pennock became the heir of John B. and Sally Dunbar. She afterwards married Lewis A. Wright. She claimed one equal undivided fourth part of the intestate's estate, and the probate court allowed her claim, and decreed the estate of Richard Moore to be distributed in equal shares to her and the appellants. From this decree the appellants appealed to the county court, and the cause was tried by the court at the September Term, 1861, ALDIS, J., presiding. The county court reversed the decree of the probate court and ordered the said estate to be distributed in equal shares to the appellants. To this decision Mrs. Wright excepted.

*William O. Wilson* and *Heman S. Royce*, for Mrs. Wright.

*White & Sowles*, for the appellants.

POLAND, CH. J. By the act of the legislature passed in 1849, and the action taken under it, Mrs. Wright became heir-at-law to Mr. and Mrs. Dunbar, and entitled to inheritance in any estate of which they should die seized, however that estate might have come to them. If Richard Moore had deceased before Mrs. Dunbar, and she had received a portion of his estate as one of his heirs, then on her decease, Mrs. Wright would have inherited it from her, by force of the heirship created by said act. But Mrs. Dunbar having died before Richard Moore, no interest ever vested in her in any part of his estate, as no one can be heir to a person living. The point presented by the case is, whether Mrs. Wright on the decease of Richard Moore, became one of his heirs, by right of representation through Mrs. Dunbar, who would have been an heir, if she had then been living. Richard Moore's estate was to be

distributed, under the fourth rule of descent, given by our statute, "in equal shares to his brothers and sisters, and to the legal representatives of any deceased brother or sister. Under the English statute of distributions 22 and 63, Car. II, c. 10, (from which this fourth rule is substantially copied,) the "representatives of a deceased brother or sister, have been always held to mean the *lineal descendants* of such brother or sister, and not to extend to any other persons, who might be entitled to inherit their estates, if they left no lineal-descendants. Such has always been the construction given to our own statutes, and this is not controverted by the counsel for Mrs. Wright. But they claim that the statute of 1849, constituting Mrs. Wright heir of Mr. and Mrs. Dunbar, has in legal effect made Mrs. Wright the child and the lineal descendant of Mrs. Dunbar, so as to bring her within this rule. The act constitutes Mrs. Wright heir-at-law of Mr. and Mrs. Dunbar, "in as full and perfect a manner as if she had been the daughter of, &c., born in lawful wedlock."

It is hardly claimed, that if the act had merely constituted Mrs. Wright *heir-at-law* of Mr. and Mrs. Dunbar, it would have had this effect, but the subsequent words, it is insisted, could have been used for no other purpose, and are mere useless surplusage, unless such effect be given them. But it seems to us that these additional words were used to show the extent and define the limits of the heirship thus created.

Suppose the act had merely declared that Mrs. Wright should be heir-at-law, and Mr. and Mrs. Dunbar left at their decease children living, as well as Mrs. Wright. Is Mrs. Wright to inherit the whole to the exclusion of the children? These words were added, as we think, to avoid any such difficulties, and the substance of the act is, that Mrs. Wright is made heir-at-law of Mr. and Mrs. Dunbar to take the share she would be entitled to as their child.

If Mrs. Wright is entitled to share in the estate of Richard Moore, it must be as one of his heirs, and not as heir to Mrs. Dunbar, because she never had any right or interest in the estate whatever. If it were competent for the legislature to enact that Mrs. Wright should be heir-at-law to Mr. and Mrs. Dunbar,

and also to be an heir-at-law to the estate of any other person by representation, as their children would be, by their signifying their assent to the act, they have not done so. She is merely made heir-at-law of Mr. and Mrs. Dunbar, to share as their child. It is not enacted that she is their child ; or that she is to be considered, and taken in law, to be their child. The act does not make her an heir of Richard Moore, or confer upon her any right of heirship to others, by right of representation. We can not go farther than the statute, which merely authorizes her to take directly as heir from Mr. and Mrs. Dunbar.

No authority has been produced, and we know of none, to the precise question presented by this case, but the cases cited by the appellants' counsel seem to go at least the full extent of supporting what we now hold. In *Stevenson's Heirs* v. *Sullivant,* 5 Wheaton 207, under this statute, " Bastards shall also be capable of inheriting, or of transmitting inheritance on the part of their mother, in like manner as if they had been lawfully begotten of such mother," the question arose, whether a bastard could take property left by a deceased legitimate brother, the mother having previously deceased ; and it was decided that he could not, though the mother, if living, would have inherited the property of the legitimate son, and upon her decease, the bastard son would have inherited it from her. The principle settled by the case was, that though the statute made the bastard heir to his mother, and made her heir to him, yet he could not inherit from his legitimate brother by right of representation on the part of his mother.

Under a very similar statute in Ohio, it was decided in *Little's Lessee* v. *Lake et al.,* 8 Ohio 289, that an estate left by a bastard, would not go to the brothers and sisters of his mother, previously deceased, though they were the legal heirs of such mother.

Our own statute relative to the rights of bastards to inherit, is substantially the same, making them legal heirs to their mothers, and their mothers to them.

But it has very recently been held by this court under our statute that illegitimate children do not inherit from legitimate children of the same mother. *Bacon* v. *McBride,* 32 Vt. 585.

These statutes give the right of heirship at least to as full extent, as the special act in this case, and there is at least a degree of kindred mingled with it, in aid of a more liberal construction, but in all these cases the courts have held that the statutes only give the right of inheritance directly between the mother and son, and they could not extend it farther. These statutes, too, make the right mutual between mother and child, which is not done by this statute. It may more reasonably be supposed that the legislature intended Mr. and Mrs. Dunbar should be heirs to Mrs. Wright, as well as she to them, than that they intended to make her heir to other persons by mere right of representation through them, after their decease; still we think the act does not make the heirship mutual. If this were held otherwise, the case supposed by the appellants' counsel, that Mrs. Wright should die, leaving Mr. and Mrs. Dunbar and her own parents living, would present a curious dilemma as to who would be her heirs.

In every view we have been able to take of this case, we all agree that Mrs. Wright is not entitled to share in the estate of Richard Moore. The judgment of the county court is therefore affirmed, and the decision is ordered to be certified to the probate court.