MAUDE   E.   BATCHELLER–DURKEE   *vs.*   GEORGE   R. BATCHELLER *et al.*

MAY 5, 1916.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

(1)   *Adoption.   Parent and Child.   Inheritance.*

Pub. Stat., 1882, cap. 164, §§ 6 and 7 (now Gen. Laws, 1909, cap. 244, §§ 5 and 6), of the adoption of children provide that "a child so adopted shall be

deemed, for the purposes of inheritance by such child, and all other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock, except ,that he shall not be capable of taking property expressly limited to the heirs of the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation."

*Held,* that under this statute no right of inheritance from a child of the adopting parent born to him in lawful wedlock was given to the adopted child.

*R. I. Hospital Trust Co.* v. *Humphrey,* 32 R. I., 318, explained and limited.

*(2)   Adoption.*

The statute of adoption creates a status and relationship unknown to the common law. The right of inheritance by the adopted child must therefore be derived from the adoption statute.

*(3)   Construction of Statutes.*

While an exception in a statute may properly be considered in ascertaining the true meaning of the statute, it cannot put in to the previous provision something which was not there before. The language of the exception therefore is to be considered in connection with the other provisions of the statute in arriving at the true meaning of the whole statute.

PROBATE APPEAL.   Heard on exception of appellees and sustained.

JOHNSON, C. J.   This cause is before this court on a bill of exceptions to a decision of the presiding justice of the Superior Court reversing a decree of the municipal court of the City of Providence by which George R. Batcheller, one of the appellees, was appointed administrator of the estate of his deceased sister, Martha A. Batcheller. This appointment was made upon a waiver of notice not signed by the appellant, who claims to have been entitled to notice as the adopted child of George H. Batcheller, the deceased father of the intestate, and hence, as she claims, one of the next of kin of the intestate.

The reasons of appeal filed by the appellant in the Superior Court were ten in number, but stated in reality but two objections to the decree, one being that the intestate was not a resident of Rhode Island, but of Massachusetts; and the other, that the appellant was not notified of the proceedings.

The first objection was abandoned, and from the record and the evidence it must be taken as established that Martha A. Batcheller was a resident of Providence at the time of her death. This left only one question in the case, namely, whether the appellant as the adopted child of the father of the intestate is one of her next of kin.

The evidence shows that the appellant was the daughter of Thomas and Eliza Harper and that after George H. Batcheller (the father of the intestate and of George R. Batcheller and Carrie W. Batcheller) married the said Eliza Harper, he and his said wife, Eliza Harper Batcheller, adopted the said Maude Elizabeth Harper by decree entered in the municipal court in Providence, December 24, 1886.

The said decree provided that, from its date, the child "shall to all legal intents and purposes be the child of said petitioners and that said child shall be deemed for the purposes of inheritance by it and all other legal consequences and incidents of the natural relation of parents and children, the child of its parents by adoption the same as if it had been born to them in lawful wedlock; except that it shall not be capable of taking property expressly limited to the heirs of the body or bodies of its parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation."

It further appears from the testimony that Martha A. Batcheller, Carrie W. Batcheller and George R. Batcheller were children of the said George H. Batcheller by former wives, and that the said Maude Elizabeth Batcheller was not related to said Martha A. Batcheller by blood or in any way other than by the adoption proceedings.

It further appears that said George H. Batcheller died and after his death the said Martha A. Batcheller died May 2, 1914.

The presiding justice of the Superior Court ruled that the appellant was one of the next of kin of Martha A. Batcheller, and hence, was entitled to notice of the pendency of proceedings for the appointment of an administrator of her

estate. An exception was taken by the appellees to his decision, based on this ruling, viz.: "To the decision of the Superior Court hereinbefore referred to sustaining the appeal from the order or decree of the municipal court." This is the only exception before this court.

The statute in force when the appellant was adopted by George H. Batcheller in 1886 was Public Statutes of 1882, Chapter 164. Sections 6 and 7 of said Chapter 164, respectively, were identical in language with Sections 5 and 6 of Chapter 244, General Laws, 1909, the statute in force at the time of the decease of said Martha A. Batcheller on May 2, 1914, which are as follows:

"Sec. 5. If, upon such petition so presented and consented to, the court be satisfied of the identity and relations of the persons and that the petitioner or petitioners are of sufficient ability to bring up the child and furnish suitable nurture and education, having reference to the degree and condition of its parents, and that it is fit and proper that such adoption should take effect, a decree shall be made setting forth the facts and ordering that from the date of the decree the child shall, to all legal intents and purposes, be the child of the petitioner or petitioners.

"Sec. 6. A child so adopted shall be deemed, for the purposes of inheritance by such child and all other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock, except that he shall not be capable of taking property expressly limited to the heirs of the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation."

(1) By the second exception the appellant is precluded from taking from the lineal or collateral kindred of the adopting parent by right of representation. Therefore if she takes at all from said Martha A. Batcheller, she must take as heir at law or next of kin. The question presented for decision therefore is: Did the appellant by reason of being

adopted as child of George H. Batcheller, deceased, become one of the heirs at law and next of kin of Martha A. Batcheller, deceased, a child of the said George H. Batcheller born to him in lawful wedlock ?   Did she, by the adoption, become, for the purpose of inheritance, not only the adopted child of said George H. Batcheller, but the sister of his children born in lawful wedlock ?

The appellees claim that the adoption under the statute only creates the relationship of parent and child, and gives to the adopted child no right of inheritance except from the parent by adoption.   The appellant claims that it enables her to inherit intestate property from a child by birth of George H. Batcheller in the same manner and to the same extent as one such child by birth would inherit from another.

The statute of adoption in this state creates a status and relationship unknown to the common law.   The right of inheritance by the adopted child must therefore be derived from the adoption statute.

(2) Appellant's counsel claim that the statute is to be liberally construed.   Appellees' counsel claim that it should be strictly construed.   Upon this question 1 Corp. Juris, Section 5, p. 1373, says: "The expressions of the courts regarding the rule of construction to be applied to adoption statutes are hopelessly at variance.   In some decisions, especially the earlier ones, the view has been taken that, such statutes being in derogation of the common law, there must be a strict compliance with every statutory requirement in order that a valid adoption may be effected.   But the tendency of the courts is away from so harsh a rule, and the better view would seem to be that, while the essential requirements of the statute must be observed, the construction should not be so narrow or technical as to defeat an adoption proceeding where there has been a compliance with every material provision.   And it has even been said that the law should be given a liberal construction, and that all presumptions are in favor of the regularity of the adoption proceedings.   The primary purpose of adoption statutes

4

is to promote the welfare of children by securing to them the benefits of a home and parental care, and they should be construed with this end in view. There is nothing in an adoption contrary to public policy or good morals or repugnant to the laws of inheritance."

In *Sires* v. *Melvin*, 135 Iowa, pp. 460, 469, the court said: "No rule for the construction of statutes for the adoption of children seems to command universal or general recognition by all courts; some going to the extreme of liberality, and others adhering strictly, if not narrowly, to the literal language of the legislative provision. We are not inclined to adopt either extreme, but think the clear purpose of the statute will be upheld, and none of our precedents discredited, if we say that, so far as statutory directions pertain to manifest essentials, they are to be strictly construed; but that failure to observe non-essentials or mere matters of detail will not operate to defeat the clear intention of the parties."

"Strict construction is not extended to the act of adoption itself. That is liberally construed in favor of the child adopted." *Hockaday* v. *Lynn*, 200 Mo. 456 (cited in 1 Corpus Juris, p. 1374).

In *Brown's Adoption*, 25 Pa. Super. Ct. 259, cited in 1 Corpus Juris, p. 1374, it is said: "While the statutes authorizing adoption are in derogation of the common law, and for this reason are, in some respects, to be strictly construed, yet their construction should not be narrowed so closely as to defeat the legislative intent which may be made obvious by their terms, and by the mischief to be remedied by their enactment."

Several cases cited by appellant's counsel containing expressions favorable to liberal construction involved the validity of the adoption proceedings. In *Blais* v *Franklin*, 31 R. I. 95, 105, this court, DUBOIS, C. J., said: "It has been well said that the object of all construction and interpretation of statutes is to ascertain the meaning and intention of the legislature, to the end that the same will be

enforced. This meaning and intention must be sought first of all in the language of the statute itself. For it must be presumed that the means employed by the legislature to express its will are adequate to the purpose and do express that will correctly. If the language of the statute is plain and free from ambiguity, and expresses a single, definite, and sensible meaning, that meaning is conclusively presumed to be the meaning which the legislature intended to convey. In other words, the statute must be interpreted literally. If the language of the statute is ambiguous, or lacks precision, or is fairly susceptible of two or more interpretations, the intended meaning of it must be sought by the aid of all pertinent and admissible considerations. But here, as before, the object of the search is the meaning and intention of the legislature, and the court is not at liberty, merely because it has a choice between two constructions, to substitute for the will of the legislature its own ideas as to the justice, expediency, or policy of the law. Black. Interp. Laws, Sections 24, 25, 26 and 27, and cases there cited. Every statute is to be construed with reference to its intended scope and the purpose of the legislature in enacting it; and where the language used is ambiguous, or admits of more than one meaning, it is to be taken in such sense as will conform to the scope of the act and carry out the purpose of the statute. · *Ibid.*, Section 30. Every statute is understood to contain, by implication, if not by its express terms, all such provisions as may be necessary to effectuate its object and purpose or to make effective the rights, powers, privileges, or jurisdiction which it grants, and also all such collateral and subsidiary consequences as may be fairly and logically inferred from its terms. *Ibid.*, Section 33 and cases cited."

It is necessary therefore to ascertain from the language of the statute the intention of the legislature in enacting it. In providing in Section 5 that such child "shall, to all legal intents and purposes be the child of the petitioner or petitioners," and in Section 6 that such child "shall be deemed

for the purposes of inheritance by such child and all other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock," does the statute give to the adopted child any right of inheritance other than from such parents by adoption ?

In construing statutes with provisions similar to those of our adoption statute, it appears to have been generally held by the courts that the adopted child is given the right of inheritance only from the parent by adoption, and that the adopted child is not made the kin of the kindred of such parent by adoption and is not given the right of inheritance from such kindred.

In 1 Corpus Juris, Section 131, p. 1401, it is said: "In a few states the statutes expressly provide that an adopted child may inherit from certain relatives of the adoptive parent. In the absence, however, of such special provision, an adopted child cannot inherit from the collateral kindred of its adoptive parent, nor from the ancestors of such parent, nor from his natural children."

Thus in Pennsylvania the statute expressly provides that the adopted children and natural children shall inherit by and through each other as if all had been the lawful children of the same parent. See *Com.* v. *Powel,* 16 Wkly. N. C. (Pa.) 297; *Daisey's Est.* 15 Wkly. N. C. (Pa.) 403. In Massachusetts under Pub. Stat. c. 148, § 7, providing that the adopted child "shall stand in regard to the legal descendants, but to no other of the kindred of such parent, in the same position as if so born to him," it has been held that an adopted child inherits from a natural child of the foster parent, *Stearns* v. *Allen,* 183 Mass. 404.

1 Corpus Juris, Section 131, n. 31 (a) reads: "Rule stated. —(1) 'Consanguinity is so fundamental in Statutes of Descents and Distributions that it may only be ignored by construction when courts are forced so to do, either by the terms of express statute or by inexorable implication. . . . In fact it may be laid down as a general conclusion

that while the Statute of Adoption must be read into the
Statute of Dower and that of Descents and Distribution,
it is with this singularity, always to be observed, viz.: that
the adopted child is so let in only for the purpose of pre-
serving in full its right of inheritance from its adoptive
parent; and the door to inheritance is shut and its bolt shot
at that precise point.'    Per Lamm, J., in *Hockaday* v. *Lynn*,
200 Mo. 456, 467, 468."

In *Keegan* v. *Geraghty*, 101 Ill. 26, the court said, at p. 35:
"Our statute of adoption provides that the child adopted
shall be deemed, for the purpose of inheritance by such child,
the child of the parents by adoption, etc., 'for the purpose of
inheritance by such child,'—from whom ?    The statute
does not say, but we say, from the adoptive parents.    We
think it must be so limited from the nature of the proceeding,
the propriety of so doing, and from the absence of express
words of further extent.    The proceeding of adoption is one
entirely between such parents and the child, at the instance,
by the consent, and upon the petition of the parent or
parents."    .   .   .    "As we construe the statute, as between
the parties to the transaction, the adopted child is deemed,
for the purpose of inheritance from the adoptive parents,
their child, the same as if he had been born to them in law-
ful wedlock."    .   .   .    "But another person, who has
never been a party to any adoption proceeding, who has
never desired or requested to have such artificial relation
established as to himself, why should his property be
subjected to such an unnatural course of descent ?    To have
it turned away upon his death from blood relations, where it
would be the natural desire to have property go and pass into
the hands of an alien in blood,—to produce such effect, it
seems to us, the language of the statute should be most
clear and unmistakable, leaving no room for any question
whatever."

The Revised Statutes of Illinois (1874), Chap. 4, § 5,
reads as follows: "A child so adopted shall be deemed,
for the purposes of inheritance by such child, and his

descendants and husband or wife, and other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock, except that he shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation."

In *Kettell* v. *Baxter*, 50 Misc. (N. Y.) 428, which concerned the right of an adopted child to take as heir at law under a trust deed, the court states the second question in the case as follows: "Is Laura C. Wendell, the adopted daughter of a predeceased sister of Sarah R. Hall, entitled to share under the deed of trust with Emma Baxter the remaining undivided one-half of the premises ?"   As to this question, the court, p. 431, says: "We must look to the trust deed and determine the *status* of Laura Wendell.   By that deed only 'the heirs-at-law' of Sarah R. Hall are vested with the remainder.   Is the adopted daughter of a predeceased sister of Sarah R. Hall an heir-at-law ?"   After stating that the adoption took place in Pennsylvania and that she invokes the statute of that state to fix her *status*, the court says: "The property involved, however, is ·located in this State.   That fact commands the application of our laws.

"Section 64 of the Domestic Relations Law, defining the rights of foster parents and adopted children, provides: 'The foster parent or parents and the minor sustain toward each other the legal relation of parent and child and have all the rights, and are subject to all the duties of that relation, including the right of inheritance *from* each other,  .   .   . and such right of inheritance extends to the heirs and next of kin of the minor, and such heirs and next of kin shall be the same as if he were the legitimate child of the person adopting.

"Adoption is the taking of a stranger in the blood as one's own child.   The proceeding of adoption and the relation established is personal to the foster parent and the child. The statute gives to them all the rights to be derived from

the legal relation of parent and child, including the 'right of inheritance *from* each other.'  The right is not given, however, either expressly or by implication, to the child, to inherit *through* the foster parent from his collateral kin.  In other words, the child becomes heir only to the foster parent. This right of inheritance flows from the artificial relation established at the request of the one and with the consent of the other.  The adoption proceedings perpetuate the desire of the parent that the child shall be *his* heir.  But a stranger to the adoption proceedings, who has never recognized the existence of any artificial relation, should not have his property diverted from the natural course of descent.  The claim of Laura Wendell that, as an adopted daughter of a predeceased sister of Sarah R. Hall, she became an heir-at-law of Sarah R. Hall, fails, unless it finds clear support in the statute.  Heirship from a source so remote must be grounded in statute and cannot be implied.

"If the foster mother of Laura Wendell had survived Sarah R. Hall, then Laura Wendell would have shared equally with Emma Baxter in the property under partition, but, as Sarah R. Hall was the survivor, Laura Wendell acquired no interest.  *Meader* v. *Archer*, 65 N. H. 214; *Quigley* v. *Mitchell*, 41 Ohio St. 375; *Moore* v. *Moore*, 35 Vt. 98; 27 Am. & Eng. Ency. of Law (2d ed.), 334."

In *Phillips* v. *McConica*, 59 Ohio St. 1, which concerned the right of an adopted child to inherit the share which the adopting parent would have taken had he survived the testator, the court, pp. 8 and 9, said:  "True, Section 3140, Revised Statutes, provides that such adopted child 'shall be to all intents and purposes the child and legal heir of the person so adopting him, or her, entitled to all the rights and privileges, and subject to all the obligations of a child of such person, begotten in lawful wedlock.'  But this is far from providing that such adopted child shall be the issue of the adopter, and of his blood and of the blood of his ancestors.

"It was well said in *Upson* v. *Noble*, 35 Ohio St. 658, that in passing the adopting statute 'the Legislature was

dealing with personal rights and duties growing out of the relation of parent and child, by transferring them from the natural to the adopted relation."

"The statute enables the adopted child to inherit from its adopter, but not through him. The statute does not make the adopted child the heir of the ancestors of its adopter, and the right of the adopted child to inherit cannot be extended beyond where the statute has fixed it. The statute in this regard must be strictly construed, as held in 35 Ohio St. 658.

"Adoption does not change the law of descent and distribution as to the property of the ancestors of the adopter. *Quigley* v. *Mitchell*, 41 Ohio St. 375. The ancestors of the adopter are presumed to know their relatives by blood, and to have them in mind in the distribution of their estates, either by will or descent, but they cannot be expected to keep informed as to adoption proceedings in the probate courts of the counties of this state; and to allow an adopted child to inherit from the ancestors of the adopter would often put property into the hands of unheard of adopted children, contrary to the wishes and expectations of such ancestors."

In *Helms* v. *Elliott*, 89 Tenn. 446, the facts are stated in the headnote as follows: "C, died intestate, leaving an adopted child and two children of his own blood. His estate was inherited equally by the three children. Afterwards one of the children of C's blood died intestate, and without issue or parents. The adopted child claimed one-half of this decedent's estate, consisting of personalty. Held: The adopted child is not next of kin, and takes no part of the estate."

The court, p. 448, quotes the Tennessee statute of adoption, in part, viz.: "Such act shall confer upon such child or children the rights of a child or children, as if they were born the child or children of such parent, and capable of inheriting or succeeding to the personal or real estate of the parent as heir or next of kin, but shall confer no rights upon

the person making the adoption to inherit or succeed to the personal or real estate of the child adopted, nor give him any right or interest in the estate of such child."

The court, p. 449, says: "It is contended that the legal *status* of the adopted child is the same as that of the child born in lawful wedlock, and that, as a consequence, the same rights of heir and next of kin exist in the one case as in the other—not only as to the parent, but as to all other persons. This position is sound in part only. So far as the parental obligations and the estate of the adopting parent are concerned, it is well taken, but beyond that it is not tenable."

. . . "As to them (real children) he occupied the same relation in law *after* the adoption as *before*—that of a stranger in blood."

In Spencer on Law of Domestic Relations the author says, on pp. 422 and 423: "In the absence of special statute to the contrary, an adopted child inherits from the adoptive parent the same as a natural child, and the lineal descendants of an adopted child inherit from him, though the property in question was derived from the adopting parent. The policy of the statutes and decisions, however, is to confine the right of succession and inheritance of such child to the adopting parent as distinguished from his or her lineal or collateral kin. But an adopted child, if its natural parents be living, may sustain for purposes of inheritance the relation or status of child to two families. It may usually inherit from both its natural and its adopted parents, and from the kindred of the former, but not from the ancestors or descendants of the latter or from their collateral kin, for to these it bears no relationship, actual or conventional."

In 27 A. & E. Ency. of L. the author says, on p. 334: 'But the adopted child becomes heir to the adopting parent only; if the law permits adoption by the husband without the assent of his wife, the child so adopted becomes the heir of the husband alone, and sustains no relation to, and is not heir of, the wife. And, indeed, the general effect of the decisions is to deny the right of the adopted child to succeed

to the estate of any member of the adopting family other than the adopting parents. So, it has been held that an adopted child does not succeed to the estate of the adopting parents' ancestors, or collateral kin, nor to the estate of children born to the adopting parents."

The Presiding Justice, in his rescript, says: "A large number of cases have been cited showing that courts have generally construed statutes similar to the main provision of our statute to mean that the adopted child can only inherit directly from its adopted parent, and that within the statute of descent an adopted child is not the kin of the ancestors or collateral kindred of its adopted parent. We should have to yield to the authority of these cases were it not for the fact that our statute contains express limitations."

The question raised in the case at bar has not heretofore been before this court.

In 1 Corpus Juris, Section 131, under note 31, *Rhode Island Hospital Trust Company* v. *Humphrey*, 32 R. I. 318, is cited in support of the statement in the text, that, in the absence of a special provision that an adopted child may inherit from certain relatives of the adoptive parent, an adopted child cannot inherit from the collateral kindred of its adoptive parent. In that case however the adopted child was prevented by the exception in our adoption statute from taking by right of representation from a testator who was the brother of her mother by adoption. Being thus precluded by the express terms of the statute it was not necessary to decide whether she would have so taken but for said exception in the statute. The court said: "As it is she may be said to be next of kin to her adopted parents for certain purposes, but the law does not at present extend the kinship to other kin of such parents who can not be made parties to the adoption and are not to be bound thereby." This remark is in accord with the general current of authority but it was not necessary to the decision of the case. The adopted child was precluded by the express provision of the statute and that was what the case decided. We cannot

agree with the claim of counsel for the appellees that the ruling in that case is conclusive. The case did not involve the consideration of the question raised in the case at bar.

So also the cases of *DeWolf* v. *Middleton*, 18 R. I. 810; *Hartwell* v. *Tefft*, 19 R. I. 644; *In re Truman*, 27 R. I. 209; *Olney for an Opinion*, 27 R. I. 495, are not in point. In *DeWolf* v. *Middleton*, the court held that the status of a person being fixed by the law of the domicile, a natural child who is made legitimate under the laws of a foreign country by the marriage of the parents domiciled there, is capable of taking by inheritance in this state as the heir of his father. In *Hartwell* v. *Tefft*, which was a bequest of a fund to pay the income in stated portions to children and grandchildren and upon their death to pay their respective portions to their lawful issue and in default of issue a gift over, the testator left a granddaughter who married, and died leaving no issue of her body, but left a child adopted by her and her husband after the death of the testator, the court, page 646, said: "The meaning of the word 'issue,' in a will, where, as in this case, nothing appears to limit its legal import, was carefully considered in *Pearce* v. *Rickard*, 18 R. I. 142. Following the well settled current of authority, it was held that the word so used includes all descendants; and as the statute gives to an adopted child the *status* of a descendant, and all the legal consequences and incidents thereof, the same as though he were born in lawful wedlock, there could be no question in such a case as this were it not for the exception of a limited estate." The court then discussed the question whether the fund was within the exception and held that it was not and that as to a legacy, when a legatee dies before the testator, leaving an adopted child, such child answers the description of a lineal descendant, who may take the legacy under a statute which prevents legacies from lapsing when the legatee leaves lineal descendants."

*In re Truman*, and *Olney for an Opinion*, are in accord with *Hartwell* v. *Tefft*.

We are of the opinion that by the main provisions of the statute the right was not given to the adopted child to inherit from the lineal or collateral kindred of the parent by adoption. Appellant's counsel attempt to draw such right from the exceptions. They say in their brief: "All the presumptions that can be drawn from the text of the statute support the interpretation here argued. It is an ancient maxim of the law that the specification of one thing is the exclusion of a different thing—*Enumeratio unius est exclusio alterius.* It is also a truism that an exception is, before excepted, included in the thing from which it is excepted or in other words the lesser is included in the greater. The two exceptions mentioned in the sixth section of the statute in question each relate to inheritance by the adopted child from kindred of the adoptive parents, *not* from the parents themselves. These express exceptions of the right to inherit, under some circumstances, from the kindred of the parents surely imply that some right to inherit from such kindred was granted by the previous general provision. Also, by the maxim just quoted, the express restrictions on inheriting from relatives of the parent by adoption must be taken as exclusive of any other restrictions by construction or implication on the right to inherit from such kindred."

A child though born to the parent in lawful wedlock takes from such lineal or collateral kindred only by right of representation, except that a child takes from another child of its parent and the descendants of such child directly under the statute of descent. General Laws, 1909, Chapter 316, Sections 1 and 2, as amended by Chapter 924, Public Laws, January session, 1913. Does the forbidding to the adopted child of the only right by which even a child born to the parent in lawful wedlock would take from the lineal or collateral kindred of the parent, except from those to whom such child stands in the relations named, justify an implication that the right of the adopted child to take directly from a child born to the parent in lawful wedlock, was contained in the language of the statute before the exception and was therefore excluded by the

enumeration in the exception ?   An exception relates only to that to which it is made, and can exclude nothing which was not contained therein before the exception was made. Bouvier translates the maxim:   "Specification of one thing is an exclusion of the rest." This expresses the idea clearly. The "other" which is excluded by the enumeration of the "one" can only be an "other" which was before exception contained in that to which the exception was made.

In order to have the effect claimed by appellant's counsel the exception must be such as to justify the implication that the right of inheritance from the kindred of the adopting parent was in the statute before the exception.   While the exception may properly be considered in ascertaining the true meaning of the statute, it cannot put in to the previous provision something which was not there before.   It cannot *ipso facto* create therein a right of inheritance from such kindred.   The language of the exception therefore is to be considered in connection with the other provisions of the statute in arriving at the true meaning of the whole statute.

The statute establishes the relation of parent and child between the adopting parent and the child adopted, gives to the adopted child the right of inheritance, and then by the exceptions forbids the taking by such child of property expressly limited to the heirs of the body or bodies of the parents by adoption or property from the lineal or collateral kindred of such parents by right of representation, thus disposing of all the ways by which a child would take property through the utilization of his direct relationship to a parent, leaving him the right of inheritance from the parent by adoption and barring his right to take property expressly limited to the heirs of the body of such parent, or from the lineal or collateral kindred of such parent by right of representation, *i. e.*, by standing in his place.   The exception deals with the inheritance of property from lineal or collateral kindred only to forbid its inheritance through the relation of the adopted child to the parent by adoption, and the property of lineal or collateral kindred is in no other way involved.

The language of the exceptions all seems to be directed to inheritance by reason of the relation of the adopted child to the parent by adoption. This is what would naturally be expected from the nature of the proceeding provided by the statute. The parent by adoption and the child adopted are the only parties to the adoption and the relation between them established thereby the only relation considered.

It is difficult to conceive that the legislature, intending to give to the adopted child the right of inheritance from the descendants and no other kindred of the parent by adoption, would have attempted it by the language of the statute in question instead of by the use of express words giving such right, as in the Massachusetts Statute, for example, providing that the adopted child "shall stand in regard to the legal descendants, but to no other of the kindred of such parent, in the same position as if so born to him."

We are of the opinion that the implication in the statute of the right of the adopted child to inherit directly from the lineal or collateral kindred of the parent by adoption is not justified by the exception in the statute. The same contention was made in the case of *Keegan* v. *Geraghty*, 101 Ill. 26, *supra.* At page 38 the court said: "It is contended that the last clause of the 5th section of our statute of adoption, by excluding the right of an adopted child to take from the lineal or collateral kindred of the adopting parents, *by right of representation*, impliedly says such child can *directly* inherit, in his own right, from the lineal or collateral kindred of the adopting parents, and that petitioner's claim of inheritance here is, to inherit directly in her own right. We rather deduce the contrary inference from this language, —that it is more in denial than in allowance of inheriting directly from the kindred of the adopting parents. This clause is introduced by way of exception from what had before been granted,—the right of inheritance,—and as by our interpretation the right so given is to inherit from the adopted parents only, the exception is to the right of inheriting from or through the adopting parents—the pro-

vision being, in meaning, that the adopted child shall not be deemed so much a child of the adopted parents, that he can, as their representative, inherit from their kindred, lineal or collateral. If, then, as being the adopted child, such child be not permitted to represent and stand in the place of the adoptive parent, and take by representation from the kindred of such parent, it would seem that much more he should not take directly from such kindred.

"This whole excepting clause at the close of the 5th section is pointed to inheriting from or through the adoptive parents, the first branch of it being, that the adopted child shall not take property expressly limited to the body or bodies of the parents by adoption; and the second, that he shall not take property from the lineal or collateral kindred of such parents by right of representation. The language is all restrictive of inheriting from or through the adoptive parents, and an adopted child being made, 'to all legal intents and purposes, the child' of the adopting parent, there would seem to be the more reason that, as representing and standing in the place of the adoptive parent, he should take by right of representation from such parent's kindred, than that he should take directly from such kindred; and any implication there may be from the prohibition to take by right of representation, should rather be against than in favor of the right to take directly. The language in question is all negative, restrictive of the right of inheriting, and it can not be construed as giving any right of inheriting."

As is indicated by the language of the opinion the Illinois statute under consideration was very similar to our statute.

Appellant's counsel further argue in support of their contention from the analogy of the legitimation of bastard children whether by general laws or by special act of the legislature, to the adoption of children. They cite the statute of this state in that regard, General Laws, 1909, Chapter 316, Sec. 7, which reads as follows: "Sec. 7. Bastards shall be capable of inheriting or transmitting inheritance on the part of their mother, in like manner as if they had been lawfully

begotten of such mother." They claim that this section has been interpreted by this court in two decisions in a manner that should be conclusive on the question now before this court as to the right of inheritance of an adopted child under the analogous section of the adoption statute. The first of these cases was decided in 1873, and is *Briggs* v. *Greene,* 10 R. I. 495. The case was begun by a bill in equity to set aside two conveyances as fraudulent, the complainant claiming as sister and heir-at-law of the grantor, Susannah. The case was heard on exceptions to the answer and exceptions sustained. On page 497 the court said: "The question, is, if the said Eliza is entitled to claim as such heir, were the deed declared void. Can she inherit as to the said Susannah? By the common law, illegitimate children could not take by descent, because in contemplation of law they had no inheritable blood, and, for the same reason, an inheritance could not be transmitted from them collaterally. In contemplation of law, a bastard has no kindred except his lineal descendants proceeding from him as from a new stock. He was, as the expression of the common law is, *nullius filius,* was of no family. He had no father, no mother, and so no kindred. His mother who bore him was not of his kindred, though her blood ran in his veins. By the common law the inheritance passed to the next of kin of the intestate, to be ascertained according to the rules of the canon law. But he had no kindred by those rules, and could be next of kin to nobody.

"Our statute of descents provides, that the estate of a intestate shall descend and pass in equal proportions to his kindred in the following course: *First.* To his children or their descendants, if any there be. If there be none, then *secondly,* to the father. If there be no father, then *thirdly* to the mother, brothers and sisters, and their descendants, or such of them as there be. These degrees of kindred differ from the course prescribed by the canon or common law, and from the rules of the civil law. Still the inheritance passes only to kindred in either case. As the bastard had no

blood which could give him kindred in any degree as ascertained by the common law or by the statute, he was equally incapable of inheriting by any of those rules. Neither was he capable of transmitting inheritance; kindred only were capable of transmitting it. This he wanted, and for want of it the current of descent was obstructed and stopped on reaching him, and there was none to flow from him to carry the inheritance. It could not be made to flow until the blood in his veins was made capable of giving him kindred. To remove the disability, and to enable him to inherit and to transmit inheritance collaterally, which he could do lineally to his descendants, the only kin which he had, the seventh section of the statute provides in these words: 'Bastards shall be capable of inheriting or transmitting inheritance, on the part of their mother, in like manner as if they had been lawfully begotten of such mother.' They shall inherit as the same mother's legitimate children, might. The illegitimate are put upon the same footing as the legitimate for the purpose of inheritance, and for this purpose are legitimate. They have then all the same kindred as her legitimate children have, and when those born in lawful wedlock take by descent according to degrees prescribed by the statute, the others take also. The kindred of both is to be traced by the same blood, the blood of the mother, which is now by the statute theirs also. A bastard still can inherit only as he has the blood of his mother. His kindred kinship can be traced only by it. He has no other blood, none of the father. Had the words, 'on the part of their mother,' been omitted from this section, the construction must still be the same, for he has no kindred except on the part of the mother. The whole course of descent to and from him is thus on her part." And again, p. 499: "It is claimed that the plaintiff in this case cannot take by descent from the intestate, because they are not sisters, and the descent is not through the mother, but is direct from sister to sister. The act does not expressly declare them to be sisters, but does it not impliedly? Were we to ask for

the definition of sisters, the answer would be but the statement of the relation in which these two persons are by this act made to stand to the mother, illegitimate daughters of the same mother. Such can be no other than sisters. They are so held by the Supreme Court of Vermont, under a similar statute of that state. The Supreme Court of Virginia, in *Garland* v. *Harrison*, 8 Leigh. 368, have also held upon the same language, in the statute of descents of that state, that they are sisters, overruling the case of *Stevenson's Heirs* v. *Sullivant*, 5 Wheat. 207, cited by the respondent, which was decided by the Supreme Court of the United States upon the same words in the same statute, in which they hold that bastards do not stand related as brother and sister, and could not inherit to each other.

"By section five it is provided, that 'the descendants of any person deceased shall inherit the estate which such person would have inherited, had such person survived the intestate.' Were the objection to prevail that the plaintiff in this case is not the sister of the intestate and could not inherit as such, still she would be entitled to take the estate which her mother would have taken had she survived the intestate. Were there no sister, the mother would have taken the whole estate of the intestate, and upon the mother's death it must have descended upon this daughter, the plaintiff, who is expressly made capable of inheriting as the legitimate descendant of such mother might."

Speaking of the intent of the statute, the court said: "It had provided a course of descent extending through all the kindred of the intestate to the last survivor of those in whose veins ran his blood; and in view of the fact that the relative of a child born out of lawful wedlock, though it were a relative by blood, was not a legitimate relative, and so was an obstruction to the course of descent, provided that relative was incapable of transmitting the estate, the intent was to remove this obstruction by making such children capable, thereby making the course of descent, while imperfect, so far as the mother's blood created the relationship,

such as to make them for the purposes of this act legitimate children of their mother, capable like all other children of receiving and transmitting an inheritance."

The second case, decided in 1889, is *Grundy* v. *Hadfield*, 16 R. I. 579.  This was an action of trespass and ejectment to recover an undivided part of real estate.  The case presented by the bill of exceptions is stated by the court as follows:  "In 1884 John Aldred died seized in fee simple of the land in suit, having acquired it by purchase.  He left a will giving all his property to his widow, "to be and remain to her during her life, or so much of the same as she may need for her support during that time.'  The widow died before this suit, but, before she died, gave a quitclaim deed of all her right, title, and interest in the land to Mary Ann Brown, upon condition that she and her husband should support the grantor during her life.  The condition was fulfilled, John Aldred died without leaving any issue or either of his parents surviving him.  He was one of six children born of his father and mother, to wit, four brothers, two of whom are dead leaving descendants; one sister, being the Mary Ann. Brown aforesaid; and himself.  His mother, before she married, had had an illegitimate daughter, to wit, Elizabeth Grundy, now dead.  The action is brought by her descendants and heirs at law against the two living brothers, against the descendants and heirs at law of the two dead brothers, and against the said Mary Ann Brown and her husband."  The court below gave judgment for the plaintiff.  The court said, p. 580, "The first exception is, because the court below refused to rule that the plaintiffs, as descendants of the illegitimate daughter of John Aldred's mother, are incapable of inheriting from John Aldred and cannot recover."  The court then cited Pub. Stat., R. I., cap.187, § 7, quoted *supra*, and *Briggs* v. *Greene*, 10 R. I. 495, *supra*, construing said statute, and holding that under it bastard children of the same mother inherit from each other as if they were legitimate.  The court says, p. 580, "The plaintiffs are entitled to the share of the estate which Elizabeth

Grundy would be entitled to if living. Pub. Stat., R. I., cap. 187, § 5. And, pursuant to said construction, Elizabeth Grundy, if living, would be entitled the same as if she were John Aldred's legitimate half sister on his mother's side. Our statutes make no distinction between brothers and sisters of the half and the full blood in respect of inheritance from each other, unless the estate is ancestral. It follows that the plaintiffs are entitled to one-sixth of the estate, for Elizabeth Grundy, if living, would inherit from John Aldred directly, like his legitimate brothers and sisters, under Pub. Stat., R. I., cap. 187, § 1, *third clause,* and not indirectly through her mother any more than they. *Smith* v. *Smith,* 4 R. I. 1."

In our opinion the appellant gets no assistance from these cases. The statute therein construed never involved the difficulty inherent in the adoption statute, *i. e.,* that of making relationship in fact where none had existed before. In the case of a bastard he had the blood of his mother, and when he was given by statute the right of inheritance on the part of his mother, as the court in *Briggs* v. *Greene, supra,* p. 498, said: "The illegitimate are put upon the same footing as the legitimate for the purpose of inheritance, and for this purpose are legitimate. They have then all the same kindred as her legitimate children have, and when those born in lawful wedlock take by descent according to the degrees prescribed by the statute, the others take also. The kindred of both is to be traced by the same blood, the blood of the mother, which is now by the statute theirs also. A bastard still can inherit only as he has the blood of his mother. His kindred kinship can be traced only by it. He has no other blood, none of the father. Had the words 'on the part of the mother,' been omitted from this section, the construction must still be the same, for he has no kindred except on the part of his mother." The last sentence quoted above, may well be noted in connection with the argument in appellant's brief that it is logically necessary to insert in the adoption statute the words "for the purpose of inheritance

by such child from the parents by adoption" in order to arrive at the construction claimed by the appellees. The words seem to us no more necessary in the adoption statute to limit the adopted child to inheritance from the parents by adoption, than the words "on the part of the mother" in the bastardy statute to limit the bastard to inheritance through the blood of his mother.

We are of the opinion that under the adoption statute no right of inheritance from a child of the adopting parent born to him in lawful wedlock is given to the adopted child. Therefore, the decision of the Superior Court sustaining the appeal was erroneous.

The appellees' exception is sustained and the case is remitted to the Superior Court with direction to affirm the decree of the Municipal Court from which the appeal was taken.

*Comstock & Canning, Henry .C. Hart,* for appellant.

*Gardner, Pirce & Thornley (William H. Camfield,* of counsel), *Everett L. Walling,* for appellees.