ESTATE OF BRADLEY: BRADLEY, Appellant, vs. TWEEDY and others, Respondents.

*November 11, 1924—January 13, 1925.*

*Descent and distribution: Natural course: Diversion by statute: Construction: Adopted child as heir of kindred of adoptive parent.*

1. Any statute interfering with the common-law principle that the property of intestate deceased persons should descend to kindred of the blood should be strictly construed, especially in Wisconsin, where the right to inherit property is a natural right.   p. 395.
2. Although adoption statutes and procedural matters leading up to adoption should be liberally construed to carry out the beneficent purposes of the adoption institution and to protect the adopted child in his rights and privileges, an adoption statute should not be liberally construed to divert the descent of property left by those not party to the adoption proceedings from its natural course of descent.   p. 396.

3. Whether the legislature may prescribe a course of descent which will take property of deceased persons out of the course of their blood is not determined, but to accomplish such a purpose the legislature should use explicit and unmistakable language. p. 397.

4. Sec. 4024, Stats., making an adopted child, for the purposes of inheritance and succession, the same as a legitimate child of the adoptive parents, does not make the adopted child the heir of kindred of the adoptive parents, the word "succession," as used in secs. 2275 and 4024, meaning devolution of title from the ancestor to his immediate heir, and often being used synonymously with "descent." p. 401.

APPEAL from a judgment of the county court of Milwaukee county: M. S. SHERIDAN, Judge. *Affirmed.*

For the appellant there were briefs by *Quarles, Spence & Quarles,* attorneys, and *Joseph V. Quarles,* of counsel, all of Milwaukee, and oral argument by *Joseph V. Quarles.*

For the respondents there was a brief by *Miller, Mack & Fairchild* of Milwaukee, and oral argument by *Arthur W. Fairchild* and *George P. Miller.*

OWEN, J. James W. Bradley departed this life February 21, 1924, intestate, leaving an estate in excess of four million dollars. He never married, and at the time of his death his parents and his brothers, William H. and Edward Bradley, were dead, William H. Bradley leaving an adopted son, *William T. Bradley,* the appellant, and Edward Bradley leaving a surviving daughter, *Edna B. Tweedy,* respondent herein.

*Edna B. Tweedy* applied to the county court of Milwaukee county for administration of the estate of said James W. Bradley, praying that letters of administration issue to the First Wisconsin Trust Company and Arthur W. Fairchild. Thereupon the appellant, *William T. Bradley,* objected to the appointment of Arthur W. Fairchild as one of the administrators, and made application to the county court to take proofs of heirship and for an order finding

him next of kin to said James W. Bradley, deceased. Upon said hearing the court made findings of fact and conclusions of law, and adjudged *Edna B. Tweedy* to be the sole heir at law of said James W. Bradley, deceased, and that the status of appellant as adopted son of William H. Bradley did not constitute him next of kin or an heir at law of said James W. Bradley, deceased, and issued letters of administration to the First Wisconsin Trust Company and Arthur W. Fairchild. From this judgment *William T. Bradley* brings this appeal.

Reduced to its lowest terms, the question is whether *William T. Bradley* is an heir at law of the deceased, James W. Bradley, by reason of his adoption as a son by William H. Bradley. It is the contention of the appellant that this relation results from the provisions of sec. 4024, Stats., which provides that—

"A child so adopted shall be deemed, for the purposes of inheritance and succession by such child, custody of the person and right to obedience by such parents by adoption, and all other legal consequences and incidents of the natural relation of parents and children the same to all intents and purposes as if the child had been born in lawful wedlock of such parents by adoption, excepting that such child shall not be capable of taking property expressly limited to the heirs of the body of such parents."

From time immemorial it has been held by English-speaking peoples that the property of intestate deceased persons should descend to kindred of the blood. This is not a conclusion arrived at by application of principles of logic, but it is a tenet of justice, intuitively and generally recognized, and crystallized into forms of law by common consent. It formed the basis for the principles of descent obtaining at common law and finds expression in the statutes of descent enacted in the various states of the Union. It goes without saying that any statute which interferes with that principle or interrupts the natural course of descent of property

should be strictly construed, not only because it contravenes the common law but because it is repugnant to fixed notions of natural justice; and this is especially true in this state, where it is held that the right to inherit property is a natural right which the legislature cannot destroy. *Nunnemacher v. State,* 129 Wis. 190, 108 N. W. 627. This spirit pervaded the opinion of this court in *Hole v. Robbins,* 53 Wis. 514, 10 N. W. 617, where it was held that the natural and not the adoptive parents of an adopted son inherited his property upon his decease, and the opinion of this court in *Lichter v. Thiers,* 139 Wis. 481, 121 N. W. 153, plainly indicates a similar disposition on the part of the court as then constituted, although we do not think that case is decisive of the question here presented, as contended by the respondent.

This court has held that adoption statutes, as well as matters of procedure leading up to adoption, should be liberally construed to carry out the beneficent purposes of the adoption institution and to protect the adopted child in the rights and privileges coming to it as a result of the adoption. *Parsons v. Parsons,* 101 Wis. 76, 77 N. W. 147; *Adoption of Bearby, ante,* p. 33, 200 N. W. 686. But it has never been held by this court, nor is it the prevailing judicial view of the courts of this country, that an adoption statute should be liberally construed to divert the descent of property, left by those who are not parties to the adoption proceedings, from its natural course of descent.

There are many reasons why an adoption statute should be strictly construed to enforce the duties and obligations voluntarily assumed by adoptive parents and to protect the adopted child in those rights and privileges which the law intends to secure to him as the result of the adoption. These reasons, however, do not apply when the rights of those who were not parties to the adoption proceedings are involved. The status resulting from adoption proceedings is not a natural one. It is a civil or contractual status. One

may have the right to assume the status of a father. to a stranger of the blood, but he has no moral right to impose upon his brother the status of an uncle to his adopted son. As was said in *Warren v. Prescott,* 84 Me. 483, 487, 24 Atl. 948, 17 L. R. A. 435, 439: "By adoption, the adopters can make for themselves an heir, but they cannot thus make one for their kindred."

In *Merritt v. Morton,* 143 Ky. 133, 136 S. W. 133, 33 L. R. A. N. s. 139, it was said:

"The act of the foster parents in adopting a child is a contract into which they entered with those having the lawful custody of the child, an agreement personal to themselves, and while they have a perfect right to bind or obligate themselves to make the child their heir, they are powerless to extend this right on his part to inherit from others. All inheritance laws are based or built upon natural ties of blood relationship, whereas an adopted child's right to inherit rests upon a contract, and hence only those parties to the contract are bound by it."

And in construing the adoption statute of Michigan the court of that state said:

"We see nothing in it to lead to the belief that it was the legislative intention to permit one to adopt heirs for third persons." *Van Derlyn v. Mack,* 137 Mich. 146, 100 N. W. 278, 66 L. R. A. 437.

Of course what was said by these courts was said with reference to the statutory provisions on the subject of adoption of their respective states. These authorities do not go to the extent of denying to the legislature the power of prescribing a course of descent which will take property of deceased persons out of the current of their blood. That is a question that was not before any of the courts quoted, a question which is not here, and upon which we very carefully refrain from expressing any opinion, in view of our decision in *Nunnemacher v. State,* 129 Wis. 190, 108 N. W. 627. We are now emphasizing the fact that to accomplish

such purpose the legislature should use explicit and unmistakable language.  The consequences which would result from such a law are very well illustrated by this very situation.  The respondent herein is related by ties of blood to the deceased.  The appellant is not related to him in any manner, neither by ties of blood nor by contractual relations.  If his contention is to be maintained, he, a stranger to the blood of the deceased, bearing to him not even the duty of kindred regard, will divide with the respondent his estate.  Furthermore, but for the existence of the respondent he would succeed to deceased's entire estate, thus diverting it entirely from his blood relatives and cutting off deceased's cousins and all his other blood relatives from any participation therein.  This result is entirely repugnant to the notions of natural justice which are embraced as by common consent by the Anglo-Saxon race.

Text-writers generally lay down the rule that under statutes of adoption which declare the adopted child to have all the rights, including that of inheritance, of a child born in lawful wedlock, the adopted child is not constituted an heir of the collateral kindred of the adoptive parents. 1 Ruling Case Law, 621; 1 Corp. Jur. 1401; Spencer, Domestic Relations, 422; 3 Thompson, Real Prop. 398, 399; 1 Woerner, American Law of Administration (3d ed.) p. 204.  This has been held in many cases, among which we cite the following: *Hockaday v. Lynn,* 200 Mo. 456, 98 S. W. 585, 8 L. R. A. n. s. 117; *Batcheller-Durkee v. Batcheller,* 39 R. I. 45, 97 Atl. 378, L. R. A. 1916E, 545; *Van Derlyn v. Mack,* 137 Mich. 146, 100 N. W. 278, 66 L. R. A. 437; *Helms v. Elliott,* 89 Tenn. 446, 14 S. W. 930, 10 L. R. A. 535; *Moore v. Estate of Moore,* 35 Vt. 98.  This list of citations might be greatly extended, but to no good purpose.  We commend the student of the subject to *Hockaday v. Lynn,* 200 Mo. 456, 98 S. W. 585, 8 L. R. A. n. s. 117, and *Batcheller-Durkee v. Batcheller,* 39 R. I. 45, 97 Atl. 378, L. R. A. 1916E, 545, for a philosophical discussion

of the subject as well as for very satisfactory reviews of the authorities of this country relating thereto.

The industry of appellant's counsel has called to our attention but three jurisdictions holding to the contrary: *In re Cadwell's Estate,* 26 Wyo. 412, 186 Pac. 499; *Shick v. Howe,* 137 Iowa, 249, 114 N. W. 916, 14 L. R. A. N. s. 980; *Riley v. Day,* 88 Kan. 503, 129 Pac. 524; and *Denton v. Miller,* 110 Kan. 292, 203 Pac. 693. In these cases, however, it is conceded that their conclusions are not sustained by the weight of judicial authority in this country. We fully agree with the Missouri court that:

"It may be laid down as a general conclusion that, while the statute of adoption must be read into the statute of dower and that of descents and distribution, it is with this singularity, always to be observed, viz.: that the adopted child is so let in only for the purpose of preserving in full its right of inheritance from its adoptive parent; and the door to inheritance is shut and its bolt shot at that precise point." *Hockaday v. Lynn,* 200 Mo. 456, 468, 98 S. W. 585, 8 L. R. A. N. s. 117, 121.

This conclusion is not out of harmony with anything that has been said by this court upon the subject. We think that the reasoning in *Hole v. Robbins,* 53 Wis. 514, 10 N. W. 617, leads naturally to this conclusion; that it is in harmony with everything said in *Lichter v. Thiers,* 139 Wis. 481, 121 N. W. 153, and in no way affects the decisions of this court in *Glascott v. Bragg,* 111 Wis. 605, 87 N. W. 853, and *Sandon v. Sandon,* 123 Wis. 603, 101 N. W. 1089. The two latter cases held that the adoption of a child after the making of a will operated as a revocation of the will, the same as marriage and the birth of issue. We agree that that is the necessary result of the voluntary adoption of a child, because the duties and obligations are the same to the adopted child as to a child born in lawful wedlock. That which we deny here is, that the consequences voluntarily assumed by the adoptive parents may be visited upon those

who were not parties to the adoption proceedings and had no voice therein.

Thus far our discussion relates to adoption statutes in general and broad principles which we think should be borne in mind in the construction of such statutes. It now remains for us to consider certain specific provisions of our adoption statute already quoted, from which appellant reads a legislative intent to make the adopted child an heir of the kindred of the adoptive parents. Sec. 4024 provides, in part, that—

"A child so adopted shall be deemed, for the purposes of inheritance *and succession* by such child, . . . the same to all intents and purposes as if the child had been born in lawful wedlock of such parents by adoption, *excepting that such child shall not be capable of taking property expressly limited to the heirs of the body of such parents.*"

Sec. 2275 provides:

"Inheritance, or succession by right of representation, takes place when the descendants of any deceased heir take the same share or right in the estate of another person that their parent would have taken if living."

Counsel for appellant quote this statutory provision, and then, speaking of the right of succession found in sec. 4024, say:

"This right of succession can relate only to inheritance from others than the adoptive parent, and refers both to lineal and collateral inheritance. There is no such thing as succession between parent and child. . . . Succession only occurs when the property of a third party is to be taken by a person representing, in another degree, the heir who would take if living."

This is an erroneous view of the meaning of the term "succession." That which is defined by sec. 2275 is succession by right of representation. Of course succession by right of representation occurs only when the property of a deceased person is to be taken by a person representing in

another degree the heir who would take if living. "Succession" is a proper term to denote the devolution of title to property from an ancestor to his immediate heir. Thus, in 18 Corp. Jur. at p. 803 it is said: " 'Succession' is a word of technical meaning, denoting the devolution of title to property under the laws of descent and distribution." And again on the same page it is said:

"Although, as has been seen, 'succession' is a broader term than 'descent' on account of its applying to personal as well as real property, the two words are often used synonymously. Indeed 'descent' is sometimes defined in the terms of, or conjunctively with, 'hereditary succession.' Also, the word 'inheritance' is sometimes used synonymously with 'descent' and 'succession;' and there is substantially no difference between some definitions of 'descent' and 'title by descent,' or between the definitions of 'succession' and 'succession by law.' "

For numerous authorities to the same effect, see Words and Phrases, title "Succession."

An inheritance tax is commonly spoken of as a succession tax, though it deals in large if not in major part with the devolution of property from a deceased person to his heirs in the first degree. The significance which appellant's attorneys attach to the word "succession" in sec. 4024 is unwarranted. Their conclusion is due no doubt to the false premise in taking as the definition of the term "succession" that which is defined to be succession by right of representation in sec. 2275.

A further contention is made that the phrase in sec. 4024, "excepting that such child shall not be capable of taking property expressly limited to the heirs of the body of such parents," implies that the adopted child may inherit directly from the heirs of the adoptive parents. This phrase constitutes an exception and it denotes a withholding of some part of that which is granted. That which is granted to the adoptive child by sec. 4024 is the right to inherit from his adoptive parents, and this exception simply withholds from

him a portion of that complete right of inheritance. It denies him the right to inherit property from his adoptive parents which is expressly limited to the heirs of the body of such parents. Holding as we do that a right on the part of an adopted child to inherit from any others than his adoptive parents calls for clear and unmistakable legislative expression, we cannot accord any such legislative purpose to a phrase so illusive as this. The reason for the presence of this phrase in the statute is not clear, unless it was the legislative thought that in the absence of such phrase an adopted child might be held to be an heir of the body of the adoptive parents. But whatever the reason for its insertion, it cannot be construed as indicating a legislative intent to make the adopted child an heir to any others than those who consented to that status and relation by the act of adoption, namely, the adoptive parents.

The adoption statutes of Rhode Island provide that "A child so adopted shall be deemed, for the purposes of inheritance by such child and all other legal consequences and incidents of the natural relation of parents and children, the child of the parents of adoption, the same as if he had been born to them in lawful wedlock, except that he shall not be capable of taking property expressly limited to the heirs of the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation." In *Hartwell v. Tefft,* 19 R. I. 644, 35 Atl. 882, 34 L. R. A. 500, and *Rhode Island Hosp. Trust Co. v. Humphrey,* 32 R. I. 318, 79 Atl. 829, we find dicta which give the impression that the exception prohibiting the adopted child from taking property "from the lineal or collateral kindred of such parents by right of representation" implied the right to take directly from the collateral kindred of the adoptive parents. But when that question came squarely before the court in *Batcheller-Durkee v. Batcheller,* 39 R. I. 45, 97 Atl. 378, L. R. A. 1916E, 545, the court came to the conclusion reached by the supreme

court of Illinois in *Keegan v. Geraghty*, 101 Ill. 26, in which case the exact question was considered by the Illinois court, and held that "no right of inheritance from a child of the adopting parent born to him in lawful wedlock is given to the adopted child." The statutes of both Rhode Island and Illinois contained exactly the same exception that we are here considering, and both courts held that neither that exception, nor the further exception found in their statutes, to wit, "no property from the lineal or collateral kindred of such parents by right of representation," justified the implication that an adopted child could inherit directly from the kindred of the adoptive parents.

Counsel for appellant state that language could not more plainly indicate the legislative intent to make the adopted child an heir of the kindred of the adoptive parents than that employed in sec. 4024. We refer to the language of the New Hampshire statute, which provides:

"The child so adopted shall bear the same relation to his adopting parents *and their kindred* in respect to the inheritance of property and all other incidents pertaining to the relation of parent and child as he would if he were the natural child of such parents."

There can be no doubt concerning the legislative intent from the language there employed, and we commend that language as clearly expressing a legislative purpose to constitute an adopted child the heir of the kindred of his adoptive parents.

Our conclusion is that the appellant is not an heir of the deceased, James W. Bradley, and that the judgment of the county court was right.

*By the Court.*—Judgment affirmed.