ESTATE OF UIHLEIN: KNOELLER, Guardian *ad litem,* Appellant, vs. UIHLEIN, Trustee, Respondent.*

*February 8—March 8, 1955.*

* Motion for rehearing denied, with $25 costs, on May 3, 1955.

For the appellant there were briefs and oral argument by *Herman M. Knoeller* of Milwaukee, guardian *ad litem*.

For the respondent there was a brief by *Fairchild, Foley & Sammond, Vernon A. Swanson,* and *Earl F. Colborn, Jr.,* all of Milwaukee, and oral argument by *Mr. Swanson* and *Mr. Colborn.*

GEHL, J.   Appellant contends that certain statutes are controlling and require that we hold that the two adopted children take under the terms of the will.  The power of the legislature to confer upon an adopted child the right to inherit from its adoptive parent cannot be questioned.  But in this case the children are not claiming as heirs of their adoptive mother or as her representatives under the inheritance laws.  They are claiming as legatees under the will and their

rights, if any, are dependent upon the terms of that instrument which were carried into the final decree. The question therefore is: What was the intention of testator? The question does not relate to the meaning of any statute unless one can be found which provides a definition binding upon us. We find no such statute. Appellant relies principally upon sec. 322.07, Stats. 1941, which when testator died, and consequently governed,—*Will of Kopmeier,* 113 Wis. 233, 89 N. W. 134,—provided:

"An adopted person shall be deemed, for the purposes of inheritance and succession and for all other legal consequences and incidents of the natural relation of parents and children, the same to all intents and purposes as if the child had been born in lawful wedlock of such parents by adoption, excepting that such child shall not be capable of taking property expressly limited to the heirs of the body of such parents. The adoptive parents of such child and their heirs and next of kin shall be deemed for the purposes of inheritance and succession by such parents, their heirs and next of kin, the same to all intents and purposes as if such child had been born in lawful wedlock of such parents by adoption, and they shall take in accordance with the general statutory provisions regulating inheritance and succession as between a parent and a child dying without issue; providing further, that if no heirs or next of kin are found in the line of the adoptive parents, the property of the deceased shall go to the natural parents, and, in case they have died, then in their line of descent. . . ."

It will be observed that the statute dealt with the right of an adopted child to inherit and not with his right to take as a beneficiary under a will. The statute changes the legal status of an adopted child but it does not purport to make an adopted child the issue of the parent. Whatever else may have been done by the legislature with respect to the rights of adopted children, we do not find that any effort has been made by it to deny or to limit the right of a person to treat

such child as he might desire when making testamentary disposition of his property.

A tendency to extend the rights of adopted children and to require their adoptive parents to treat them as the equals of their natural-born children has developed in legislation and has been encouraged by the courts, but we have found no Wisconsin case in which it has been said that the statutes affecting the rights of adopted children may be construed as ignoring the theory of the Wisconsin court that—

". . . the power to make a will is an inherent power and not a statutory power. They hold that the right to make a will is secured by the constitution, and that the legislature can regulate succession by will or descent in intestacy within reasonable limits, but that it cannot impair such rights substantially or take them away entirely.

"Under this theory, every person of mature age and sound mind has a right, conformably to statutory regulations designed to safeguard such right, to make his own will, and have it carried out according to his intent; and the constitutional right to make a will includes the right to have a valid will so given effect as to enforce the intention of the testator." 1 Page, Wills (2d ed.), p. 38, sec. 22, cited with approval in *Estate of Ogg,* 262 Wis. 181, 54 N. W. (2d) 175.

The guardian *ad litem* urges that we give consideration to the 1947 amendment of sec. 322.07, Stats., made before the death of Claudia, and which enlarges the rights of adopted children. Since 1947 the statute has read as follows:

"(1) Except as otherwise provided in this section, the effect of the order of adoption is to completely change the legal status of the adopted person from that of a child of the natural parents to that of a child of the adoptive parents; and to free the adopted person from all legal obligations to or on account of the natural parents, and *vice versa.* . . ."

The amendment, if it were to be considered as affecting the status of an adopted child in a situation such as we have here, is not controlling for it was made after testator's death.

The guardian *ad litem* relies also upon sec. 238.13, Stats., which provides:

"When a devise or legacy shall be made to any child or other relation of the testator and the devisee or legatee shall die before the testator, leaving issue who shall' survive the testator, such issue shall take the estate so given by the will in the same manner as the devisee or legatee would have done if he had survived the testator unless a different disposition shall be made or directed by the will."

This statute is applicable only when the adoptive parent named as a beneficiary *dies before the testator*. In such case, of course, the children would have been adopted before the death of the testator, and presumably the fact of adoption would have been known to him.

The statute does not purport to affect the right of an adopted child to take under a will and applies only when the devisee or legatee shall die before the testator. Its purpose is to prevent a lapse and it is not designed to have any further effect. *Estate of Hoermann,* 234 Wis. 130, 290 N. W. 608. Identical statutes were existent in Massachusetts and Michigan when the rule to which we shall refer, and which is controlling in this case, was applied in *Bundy v. United States Trust Co.* 257 Mass. 72, 153 N. E. 337, and *Russell v. Musson,* 240 Mich. 631, 216 N. W. 428. The statute was in effect when *Lichter v. Thiers,* 139 Wis. 481, 121 N. W. 153, to which further reference will be made, was decided.

Reliance is also placed upon sec. 370.01 (17), Stats., wherein the word "issue" is defined. It provides:

" 'Issue,' as applied to descent of estate, includes all the lawful descendants of the ancestor."

It is quite clear that the definition applies only in the case of *descent of estates* and has no application to the rights of persons taking under a will.

"There are many reasons why an adoption statute should be strictly construed to enforce the duties and obligations voluntarily assumed by adoptive parents and to protect the adopted child in those rights and privileges which the law intends to secure to him as the result of the adoption. These reasons, however, do not apply when the rights of those who were not parties to the adoption proceedings are involved. The status resulting from adoption proceedings is not a natural one. It is a civil or contractual status. One may have the right to assume the status of a father to a stranger of the blood, but he has no moral right to impose upon his brother the status of an uncle to his adopted son. As was said in *Warren v. Prescott*, 84 Me. 483, 487, 24 Atl. 948, 17 L. R. A. 435, 439: 'By adoption, the adopters can make for themselves an heir, but they cannot thus make one for their kindred.' " *Estate of Bradley*, 185 Wis. 393, 396, 201 N. W. 973.

It is quite generally held by the courts, including that of Wisconsin, as we shall point out, and stated by the text writers, that when, in a will, provision is made for the child of some person other than testator and a child is adopted by that person after the death of testator, the adopted child is not, in the absence of contrary compelling circumstances, entitled to share in a gift to children or issue of the third person. Cases so holding are gathered in notes in Anno. 5 A. L. R. 1280; Anno. 70 A. L. R. 621; Anno. 144 A. L. R. 670. In Anno. 70 A. L. R. 626, the author states:

"The fact that the adoption was subsequent to the testator's death raises a grave presumption against an intention to include such adopted child, and the better rule seems to be that the fact that the testator had no knowledge of the adoption at his death overcomes the presumption that his intention was so to draw his will as to harmonize with the adoption laws."

The authors of texts have so stated the rule. See 57 Am. Jur., Wills, p. 921, sec. 1383; 69 C. J., Wills, p. 177, sec. 1200; 69 C. J., Wills, p. 178, sec. 1201; 3 Page, Wills (life-

time ed.), p. 142, sec. 1023; Restatement, 3 Property, p. 1520, sec. 287; Restatement, 3 Property, p. 1545, sec. 292.

The rule was applied in *Lichter v. Thiers, supra.* It has not been abandoned by this court and controls in the instant case. It was held that a child adopted by the testator's granddaughter after his death did not take as a child under the will which gave to the granddaughter a life estate with remainder to her children. Particular emphasis was laid upon the fact that the child had not been adopted until the testator's death. The child relied principally upon sec. 4024, Stats. 1898, now sec. 322.07, which then read as did sec. 322.07 before its amendment in 1947. The court called attention to the fact that the granddaughter was a young unmarried girl at the time of testator's death, which fact repelled the idea that testator, in disposing of his property as he did, thought of "great grandchildren in any other sense than issue of her blood."

The same assumption should be made here. Mr. Uihlein's children at the time of his death ranged in age from twenty to thirty years. Claudia was twenty-three years old. The guardian *ad litem* contends that we should consider the statement made by her when she adopted one of the children that she was diabetic and gave as the motive of adoption the fact that she was unable medically to have children of her own. There is nothing in the record to indicate that the testator knew of Claudia's inability to have children of her own.

It should be observed that in *Lichter v. Thiers, supra,* the court was concerned with the word "children" which it seems to us is more easily construed as including "adopted" children than is the word "issue" which is ordinarily construed as meaning blood descendants. We do not see how, without disregarding the decision in the *Lichter Case,* the claim of the adopted children can be upheld in this case.

The guardian *ad litem* urges *Estate of Holcombe,* 259 Wis. 642, 49 N. W. (2d) 914, as authority for his conten-

tion. In that case the residue of testatrix's estate was given to three named cousins of testatrix in even and equal shares, share and share alike. Testatrix died on May 20, 1949. Nellie J. Curtis, one of the named cousins, had predeceased her leaving an adopted son. In that case we considered the nonlapse statute, sec. 238.13, which as we have already pointed out is limited in its application to the case where the named devisee or legatee dies before the testator and held that the child, adopted *before* testatrix's death was to be treated as the lawful descendant of his adoptive mother. The situation here is different. Here the testator predeceased the person through whom the adopted children claim. There is also the distinction that there the adopted child took as representative of his deceased mother; here the children seek to take as beneficiaries under the will.

*Estate of Nelson,* 266 Wis. 617, 64 N. W. (2d) 406, was also relied upon by the guardian *ad litem.* That case involved an intestate estate and the decision is not controlling here.

*By the Court.*—Judgment affirmed.