ESTATE OF RHODES: FRISCH and others, Appellants, vs.
HOWARD, Respondent.*

*November 9—December 6, 1955.*

* Motion for rehearing denied, with $25 costs, on February 7, 1956.

For the appellants there were briefs by *Johns, Roraff, Pappas & Flaherty, Frank H. Grover,* and *George Thompson, Jr.,* all of La Crosse, and oral argument by *Mr. Leonard F. Roraff* and *Mr. Grover.*

For the respondent there was a brief and oral argument by *Robert J. Jenkins* of La Crosse.

BROWN, J. The will was signed by the testatrix September 18, 1935. The part for which construction was demanded reads as follows:

"*Second:*—I hereby give, devise and bequeath all the rest, residue and remainder of my said estate, both real, personal and mixed, to my beloved sister, Mrs. Louise Welch, residing at number 2031 Loomis street, in the city of La Crosse, county of La Crosse and state of Wisconsin, and to my beloved brother, Herman Kletcka, residing at number 1433 Badger street in the city of La Crosse, county of La Crosse and state of Wisconsin, to each an undivided one half thereof,

share and share alike, and in case either of my said heirs shall be deceased at the time of my said death, the share of such deceased brother or sister to go to his or her natural heirs, as defined in the Wisconsin laws of descent and distribution."

Edith Rhodes, who died October 7, 1954, never had children of her own. She had sisters, Louise Welch and Bertha Borger, and a brother, Herman Kletcka. Louise Welch never had natural children and when the will was executed she was fifty-eight years old. She had adopted Meta Howard on March 3, 1914, more than twenty years before the date of the will. This fact was well known to Mrs. Rhodes then and thereafter.

Mrs. Welch died during Mrs. Rhodes' lifetime leaving the adopted daughter who has also survived Mrs. Rhodes. She is the respondent. Testatrix's sister, Bertha Borger, died during Mrs. Rhodes' lifetime leaving three daughters who still survive. They are appellants Jessie Wege, Sophia Uehling, and Lulu Zeichert. Neither Mrs. Borger nor her daughters are named or referred to in the will.

Herman Kletcka died during the lifetime of the testatrix leaving two daughters who still survive. They are appellants Helen Frisch and Thelma Moen.

The trial court found as a fact and also as a conclusion of law that it was the intent of Mrs. Rhodes to include as a beneficiary of her will Meta Howard and to exclude the children of the deceased Bertha Borger. The controversial part of the judgment is as follows:

". . . that paragraph second of the last will and testament of Edith Rhodes should be and hereby is construed to mean that in the event that either or both her brother, Herman Kletcka, and her sister, Louise Welch, should die prior to the death of the testatrix, such share or shares should go to the person or persons entitled to take in accordance with the laws of descent and distribution in the state of Wisconsin,

as such law existed at the time of the death of the testatrix; that the testatrix, Edith Rhodes, intended that a determination of the heirs of her brother, Herman Kletcka, and her sister, Louise Welch, as defined by the laws of descent and distribution in Wisconsin, should be made as of the date of her death, and did not intend to exclude Meta Howard, the adopted daughter of Louise Welch; that the testatrix, Edith Rhodes, intended thereby that the daughters of her deceased sister, Bertha Borger, be excluded from sharing in her estate; that testatrix intended that in determining the person or persons entitled to take under the laws of descent and distribution of Wisconsin, section 322.07 of the Wisconsin statutes should apply and be read in conjunction therewith; and that testatrix, Edith Rhodes, thereby intended that the residue of her estate should go one half ($\frac{1}{2}$) to Meta Howard, adopted daughter of Louise Welch, one fourth ($\frac{1}{4}$) to Helen Frisch, daughter of Herman Kletcka, and one fourth ($\frac{1}{4}$) to Thelma Moen, daughter of Herman Kletcka."

The question here is who gets the share of the residue primarily designed for Louise Welch. The will directed that, if Mrs. Welch did not survive, the share should go to Mrs. Welch's natural heirs as defined in the Wisconsin laws of descent and distribution. The appellants contend they are the natural heirs because they are related by blood to their aunt, Mrs. Welch.

It is presumed that every word of a will is used advisedly and with its ordinary meaning. It is the duty of the court first to read the will giving ordinary meaning to its words and, if this produces a plain result, that result must prevail and be taken to express the testator's intent. This principle, under varying circumstances, has been repeatedly declared by this court. *Estate of Treat* (1948), 253 Wis. 527, 530, 34 N. W. (2d) 685; *O'Hearn v. O'Hearn* (1902), 114 Wis. 428, 432, 90 N. W. 450; *Estate of Gray* (1953), 265 Wis. 217, 221, 222, 61 N. W. (2d) 467; *Will of Petit* (1945),

246 Wis. 620, 622, 18 N. W. (2d) 339; *Holmes v. Walter* (1903), 118 Wis. 409, 413, 95 N. W. 380.

Counsel on both sides praise the rule and each contends that the provisions of the will are so clearly in favor of his client that there is no room for a construction. We find the question more difficult. Reading the words of the controversial disposition we turn, as the will directs, to the Wisconsin laws of descent and distribution, chs. 237 and 318, Stats.

Sec. 237.04, Stats., refers us to sec. 322.07 for the right of descent from and to an adopted person, which section declares in sub. (1):

"Except as otherwise provided in this section, the effect of the order of adoption is to completely change the legal status of the adopted person from that of a child of the natural parents to that of a child of the adoptive parents; and to free the adopted person from all legal obligations to or on account of the natural parents, and *vice versa.*"

Statutory directions follow covering various contingencies, but nowhere do we find the promised definition of the term "natural heirs." Contrary to the contentions of both counsel, by reason of its reference to a nonexisting definition or standard, a reading of the will does not provide a plain meaning. We turn then to the dictionaries and from Webster's New International Dictionary find that "natural" in its reference to persons is defined as "of, from or by, birth; . . . existing or characteristic from birth;" also as "actually begotten by one [opposite to adopted]." "Natural heirs" does not appear in Webster but it does in 2 Bouvier, Law Dict. (3d ed.), p. 2297, where we find "Natural heirs. As used in a will and by way of executory devise, they are considered as of the same legal import as 'heirs of the body.'" To like effect are most of the citations found in 28 Words and Phrases (perm. ed.), p. 56, under the term "Natural Heir" though there are examples where, for lack of an heir got by

or on the body of the ancestor, some other person, not so engendered, was held to have been intended by the testator in his use of the term. So, in *Ludlum v. Otis* (1878), 32 N. Y. (15 Hun) 410, the testator's mother and sister were allowed to take as "natural heirs" in preference to cousins. We regard the will as ambiguous for lack of "natural heirs as defined by Wisconsin laws of descent," etc., or by dictionary definition. We must construe in an effort to ascertain the testatrix's intent.

Since neither appellants nor respondent fulfil the ordinary meaning of "natural heirs" as construed and applied by the courts, it might be held that an intestacy has occurred and Mrs. Welch's share should be distributed generally to the heirs of the testatrix as prescribed by the statutes governing the distribution of intestate estates. To do this is to confess that we cannot find within the four corners of the will, read in the light of the circumstances surrounding the testatrix when she executed it, the person or persons to whom she intended to give this share, notwithstanding her evident purpose to make provision for its devolution if Louise Welch did not survive her. The court " '. . . must look to the language of the whole will and read it in the light of the circumstances surrounding the testator, in order to discover what was apparently in his mind at the time he made it, and thus ascertain his intention.' " *Estate of Britt* (1947), 249 Wis. 602, 607, 26 N. W. (2d) 34. Under such conditions the trial court properly turned to the surrounding circumstances and on competent evidence found that Mrs. Welch never had any children of her own but that some twenty years before the will was signed, and forty years before Mrs. Rhodes' death, to Mrs. Rhodes' knowledge, Mrs. Welch had adopted a daughter, Meta Howard. It found, too, that when the will was executed Louise Welch was fifty-eight years old [and presumably past childbearing]. It noted that the will

did not provide for Mrs. Rhodes' sister, Mrs. Borger, nor for Mrs. Borger's natural heirs, as it had done for testatrix's other sister and her brother and their natural heirs.

While the various parties seek to take under the will and not under the statutes regulating inheritance through intestacy, the will's reference to the Wisconsin statutes of descent and distribution cannot be ignored. Even though they do not *define* "natural heirs," as the will supposed, the key to the intent of the testatrix must be in such statutes. By this reference we consider she meant to call attention to the fact that between Mrs. Welch and Meta Howard the relationship was that of mother and daughter and that the latter had the *status* of a natural daughter and heir. The trial court held that she was "the equivalent" of a natural daughter, which is a phrase to which appellants object though we consider it appropriate to their relationship. There is no thought here of making Meta Howard a "natural niece," or its equivalent, of the testatrix. By the adoption laws the legislature did not make, or purport to make, blood relatives of those who are strangers nor prevent testators from preferring relatives by birth to those by adoption. *Estate of Uihlein* (1955), 269 Wis. 170, 68 N. W. (2d) 816. But by its reference to the statutes the will calls attention to the fact that Mrs. Welch has a daughter, an heir, exactly as though the daughter was born to her.

We cannot read into this will,—from the language "natural heirs of Louise Welch," or otherwise,—any intent to benefit the children of Bertha Borger, nor does such benefit follow by operation of law. They are not Louise's natural heirs nor do the circumstances reveal an intent to treat them as such, as they do in the case of Meta Howard. We are confined to a choice between a partial intestacy and a designation of Louise Welch's adopted daughter as Louise's "natural heir" within the meaning Mrs. Rhodes ascribed to the words. The testatrix was providing against intestacy and,

under the conditions surrounding her when she made her will, we conclude that it was her intent, in making a contingent bequest to the "natural heirs" of Louise Welch, to leave the deceased Mrs. Welch's share of the residue to the daughter who, *as between such mother and daughter* had the status of natural relationship.

The judgment determining heirship included beneficiaries under the will in addition to heirs at law, who take intestate realty, and next of kin, who take intestate personalty. *Will of Bray* (1951), 260 Wis. 9, 49 N. W. (2d) 716. It also stated that Louise Welch and her deceased husband adopted Meta Howard who "is the sole issue and lineal descendant of Louise Welch." Appellants have appealed from this determination as so expressed.

As to the inclusion of beneficiaries, that is, those who take by will, in a judgment determining heirship, we regard this as improper, but harmless in this instance where all those named in the judgment actually are heirs at law and next of kin. It might be otherwise if persons who could take only by virtue of the will were included.

As to the designation of Meta Howard as Mrs. Welch's issue and lineal descendant, for the purpose of intestacy, which is what proof of heirship deals with, she has that *status* by virtue of sec. 322.07, Stats. *Estate of Holcombe* (1951), 259 Wis. 642, 49 N. W. (2d) 914, and *Estate of Nelson* (1954), 266 Wis. 617, 64 N. W. (2d) 406. If the judgment had recited that this status was by virtue of the adoption we would not criticize it. But the bald statement that Meta Howard was issue and lineal descendant of Mrs. Welch is contrary to fact and no statute could alter her actual birth. Sec. 322.07 does not purport to do so. *Estate of Uihlein, supra,* page 173. However, this, too, becomes inconsequential where, as here, distribution is determined by a will.

*By the Court.*—Judgment affirmed.