ESTATE OF BOYLE: NIELSEN and another, Appellants, vs. MARSHALL & ILSLEY BANK and others, Respondents.

*November 9——December 6, 1955.*

324

For the appellants there were briefs and oral argument by *Erwin Esser Nemmers* of Milwaukee.

For the respondent Marshall & Ilsley Bank there was a brief by *Tonjes & Mortensen* of Fond du Lac, and oral argument by *John C. Tonjes*.

For the respondents Madeleine Boyle Saffouri Henning and Helen Marie Boyle Schmitt there was a brief and oral argument by *John J. Schneider* of Fond du Lac.

*George M. St. Peter* of Fond du Lac, guardian *ad litem* for minor natural children of Francis H. Boyle and grandchildren.

FAIRCHILD, C. J.   The instruments mentioned in the above statement are so related to the purposes of the creator of the trust that they must be considered of controlling significance. Julia Boyle, in June, 1928, formed her plan to meet problems then existing and those which in her judgment might develop.  On June 1, 1928, she created a trust, the terms of which provided for the payment to her son, Francis H. Boyle, the income from that portion of her estate appointed as the corpus of the trust.  The period during which payments were to be made was therein limited to the time from the creation of the trust to the date of the death of Julia Boyle.  On October 14, 1930, Mrs. Boyle, the donor of the trust, made her will, and in it she expressly declared her intention to exclude adopted children.  Following the execution of the will and on November 30, 1931, the trust agreement of 1928 was modified with the consent of the sole beneficiary, Francis H. Boyle.  Both the creator of the trust and the donee were of full age and competent. *Matthews v. Thompson* (1904), 186 Mass. 14, 71 N. E. 93, 66 L. R. A. 421.

The appellants contend that when Francis H. Boyle consented to the modification of the trust agreement he thereby became cosettlor of the trust with his mother, and that, there-

fore, if his intention was to include his adopted children, that intention is to be considered in construing the trust as against the intention of his mother.

The matter to be considered, then, is whether the modification of the trust occurring as it did made Francis H. Boyle a cosettlor thereof. But for the modification, the death of Julia G. Boyle would have terminated the trust and the corpus would have reverted to her estate to be disposed of according to her will. But a person has capacity to create a trust by appointing property in trust to the extent that he has capacity to make an appointment free of trust. It was Julia G. Boyle who directly brought into existence the trust in 1928. She was the sole owner of the property out of which the trust res was carved. Francis contributed nothing to the corpus of the trust at any time. He was the donee and the sole beneficiary of the 1928 trust. No other vested interest was attached.

In 1931 Mrs. Boyle, the grantor or settlor, desired to modify the trust agreement to make provisions for the children of Francis. An amendment was drawn up and signed by Francis. The modification took nothing away from Francis but instead extended the period of time during which he was to receive the income from the trust corpus, from the time originally fixed to terminate at the death of Julia G. Boyle to the time of the settlement of the estate. In addition, it provided for payments to his children, who until then were not included. "Modification or amendment of a trust is ordinarily possible by parties in interest and against parties without vested interest." 54 Am. Jur., Trusts, p. 74, sec. 68. "When the original trustor undertakes to reshape or remold a trust, the original trustor is still the 'grantor' of the trust estate regardless of the form that the reshaping or remolding of the trust may take." *MacManus v. Commissioner* (6th Cir. 1942), 131 Fed. (2d) 670. When Julia G. Boyle, with the consent of the sole beneficiary, Francis, amended the original trust, Francis was in no way made a settlor or donor

328

or grantor of the interests created in his issue or children. This being so, it follows that whatever the intention of Francis may be with respect to the inclusion of the appellants is of no weight in the construction of the trust agreement. The proposition advanced by appellants that their status is equal to that of children of the blood is so lacking in substance that, when viewed in the light of the evidence referred to, in reason and under the authorities it must be denied. See 1 Scott, Trusts, p. 785, sec. 156.3; 1 Bogert, Trusts and Trustees, p. 270, sec. 41; Restatement, 2 Trusts, pp. 995, 1000, 1040, secs. 330, 331, 340, 357; *Warsco v. Oshkosh Savings & Trust Co.* (1924), 183 Wis. 156, 160, 196 N. W. 829; *Guaranty Trust Co. v. New York Trust Co.* (1947), 297 N. Y. 45, 74 N. E. (2d) 232; *Lehman v. Commissioner* (2d Cir. 1940), 109 Fed. (2d) 99.

Julia G. Boyle, being the sole settlor of the trust, it is her intention which is controlling. Julia G. Boyle gave expression to her intention by expressly providing that "throughout this will the word 'issue' shall be construed to mean in each case legitimate child, children, . . . by blood respectively and not by adoption or otherwise." The only conclusion warranted by that language is that Mrs. Boyle, the testator of the will and creator of the trust, did not wish her property to go to children outside the blood. The circumstances surrounding her at the time she executed her will on October 14, 1930, were the same as those surrounding her at the time of the modification of the trust instrument, which occurred thirteen months later, on November 30, 1931. At that time her natural beneficiaries included her son, Francis H. Boyle, and three grandchildren. There were no adopted grandchildren in November, 1931. The children involved were adopted in 1932 while the wife of Francis H. Boyle was living outside of the state. On August 10, 1933, Julia G. Boyle drew a codicil to her will. In that codicil she reaffirmed her declara-

tion that adopted children were not to be included under the term "issue" as used in the will.

In *Estate of Uihlein* (1955), 269 Wis. 170, 176, 68 N. W. (2d) 816, the following language from *Estate of Bradley* (1925), 185 Wis. 393, 396, 201 N. W. 973, was set out and quoted with approval:

" 'There are many reasons why an adoption statute should be strictly construed to . . . protect the adopted child. . . . These reasons, however, do not apply when the rights of those who were not parties to the adoption proceeding are involved. . . . One may have the right to assume the status of a father to a stranger of the blood, but he has no moral right to impose upon his brother [mother] the status of an uncle [grandmother] to his adopted son.' "

It is unnecessary to review the cases where descent may be controlled by the statute governing inheritance where the consideration of adopted children must enter in.

The order of the circuit court must be affirmed.

*By the Court.*—Order affirmed.