ESTATE OF TOPEL: TENNESSEN, Guardian *ad litem*, Appellant, v. TOPEL and others, Administrators, Respondents.

*September 12—October 4, 1966.*

For the appellant there was a brief and oral argument by *C. A. Tennessen* of Kenosha, guardian *ad litem*.

For the respondents there was a brief by *Vaudreuil & Vaudreuil* of Kenosha, and oral argument by *Leo E. Vaudreuil.*

HALLOWS, J.    The first issue is the effect of sec. 48.92 (1) and (2), Stats.[1]  It is argued the language of this statute when compared with its predecessor sec. 322.07,

---

[1] "48.92   **Effect of adoption.**  (1) After the order of adoption is entered the relation of parent and child and all the rights, duties and other legal consequences of the natural relation of child and parent shall thereafter exist between the adopted person and the adoptive parents. The adopted person shall be entitled to inherit real and personal property from and through the adoptive parents in accordance with the statutes of descent and distribution, and the adoptive parents shall be entitled to inherit real and personal property from and through the adopted person in accordance with said statutes.

"(2) After the order of adoption is entered the relationship of parent and child between the adopted person and his natural parents, unless the natural parent is the spouse of the adoptive parent, shall be completely altered and all the rights, duties and other legal consequences of the relationship shall cease to exist."

Stats. 1951, does not mean the right to inherit through a natural parent or from other natural kin is extinguished by adoption.

The effect of adoption on the right of inheritance of the adopted person depends upon the particular wording of the statute and generally the right to inherit from one's natural relatives after adoption is unaffected unless the statute clearly provides to the contrary. See Anno. Adoption—Inheritance from Natural Kin, 37 A. L. R. (2d) 333. It is true sec. 322.07, Stats., expressly provided in sub. (4) that the adopted person did not lose the right to inherit from its natural parents, but sub. (1) provided that the effect of the order of adoption was to completely change the legal status of the adopted person from that of a child of the natural parents to that of a child of the adoptive parents with the noted exception. In the *Estate of Ries* (1951), 259 Wis. 453, 49 N. W. (2d) 483, 50 N. W. (2d) 397, this section was held to prevent an adopted child from inheriting from its natural relatives excepting from its natural parents. In *Will of Adler* (1966), 30 Wis. (2d) 250, 140 N. W. (2d) 219, we held an adopted child could inherit through its adoptive mother as her issue under a trust making a distribution to designated beneficiaries and in the event of death to the issue of the deceased beneficiary. The rationale of both of these cases is that sec. 322.07 completely changed the status of an adopted child by cutting off the rights to inherit from and through natural kin and substituting therefor the same inheritance rights from and through the adoptive parents and kin.

Sec. 322.07, Stats., was repealed by ch. 575, Laws of 1955, and sec. 48.92 was enacted as a part of the Children's Code. The exception retaining the right of an adopted child to inherit from his natural parents was removed and the language of the effect of adoption was recast in general terms of status rather than in terms of specific rights. Sub. (1) of sec. 48.92 deals with the

rights which flow from the adoptive status. Sub. (2) deals with the opposite side of the coin and declares what rights and relationships of the natural status are terminated and lost upon assuming the adoptive status. This manner of expressing the rights of inheritance of an adopted person follows the general pattern of modern adoption statutes in not specifically or completely defining the incidents of the relation between an adopted child and its kindred by adoption.

Modern adoption statutes generally establish a status, the incidents of which are in the nature of a natural relationship of parent and child. 2 Am. Jur. (2d), Adoption, p. 941, sec. 100. There is no exception in the present statute to this complete substitution of adoptive relationship for the natural relationship. We think the intent of sec. 48.92, Stats., from its language is to effect upon adoption a complete substitution of rights, duties, and other legal consequences of the natural relation of child and parent and kin with those same rights, duties, and legal consequences between the adopted person and the adoptive parents and kin.

In construing the word "issue" in sec. 237.01, Stats., we find it defined in sec. 990.01 (17), not as issue of the body but as follows: " 'Issue,' as applied to descent of estate, includes all the lawful descendants of the ancestor." Secs. 237.01 and 990.01 (17) must be read in connection with sec. 48.92, and when read together the effect of adoption is to make the adopted person the lawful descendant of the adoptive parents and to terminate that status of the natural parents.[2] In this case these minors are still the grandchildren of Earl C. Topel, the deceased, but they are not his lawful descendants under the present law of descent and distribution.

[2] The Proposed Wisconsin Probate Code, Study Draft, treats the status of adopted children for purposes of inheritance, wills, and class gifts in its sec. 851.51, and by sub. (2) would allow inheritance on the instant facts.

This construction is fortified by the 1955 Report of the Wisconsin legislative council on the Children's Code, vol. VI, part I, wherein it is stated the purpose of adoption is to create a relationship of parent and child between persons who are not so related by blood and to completely change the status of a person adopted from a child of his natural parents to a child of his adoptive parents. It was recommended that the status of an adopted person be completely changed from that of a child of his natural parents to that of a child of his adoptive parents and all inheritance rights by and from the natural relatives be cut off. The report points out that this change in the effect of adoption is made by sec. 48.92, Stats., that the change was also recommended by the state board of county judges, and that sub. (1) of the section was taken from the Uniform Adoption Act. The report gives various policy reasons in favor of the change.[3]

---

[3] "Allowing an adopted child to inherit from his natural relatives is apparently intended to aid that child by insuring that, if some of his natural relatives become very wealthy, he can share in that wealth. This would seem to be a very minor consideration because wealthy persons usually provide for the distribution of their property by will. If the relative wishes the adopted person to inherit from him, he can include that person in the will. If the adopted person is not included in the will, the statutory right to inherit probably will not help him. Factually, a majority of nonrelative adoptions involve illegitimate children. Most of them are from families where there will be very little money to inherit. In this type of case much more hardship may be created by revealing the identity of the child to his natural relatives than the youngster will gain from any small amount of money he may inherit. Furthermore, revealing the identity of the child and his natural relatives defeats the entire purpose of the secrecy of adoption records.

"In addition to social implications, allowing an adopted person to inherit from his natural relatives creates problems in settling estates because tracing adopted relatives of the deceased may be an impossible task." Wisconsin Legislative Council, 1955 Report, Children's Code, vol. VI, part I, p. 36.

The legislative policy evidenced by sec. 48.92, Stats., is a change in thinking from the older view that adoption was only a type of contractual affiliation between the parties and that while the adoptive parents could make for themselves an heir by adoption, they could not by that means make one for their kindred. This view is expressed in the *Estate of Boyle* (1955), 271 Wis. 323, 329, 73 N. W. (2d) 425, 428; *Estate of Bradley* (1925), 185 Wis. 393, 396, 201 N. W. 973, 974; *Estate of Uihlein* (1955), 269 Wis. 170, 176, 68 N. W. (2d) 816, 820. The public attitude toward adoption and its acceptance has greatly changed in recent years. The philosophy of present adoption statutes of this state is best expressed by an anonymous poem entitled, The Adoptive Mother's Answer:

> Not flesh of my flesh
> Not bone of my bone
> But still miraculously
> My own.
> Never forget
> For a single minute—
> You didn't grow under my heart
> But in it.

The second issue raised on appeal is whether a guardian *ad litem* is required in an adoption proceeding involving minors. Adoption proceedings, unknown at common law, are of statutory origin and the essential statutory requirements must be substantially met to validate the proceedings. *Adoption of Tschudy* (1954), 267 Wis. 272, 284, 65 N. W. (2d) 17, 24. There is no question in the instant case that all statutory requirements were met. There is no statutory requirement that a guardian *ad litem* be appointed in an adoption proceeding to represent the adopted child. We hold the jurisdiction of the court did not require the appointment of a

guardian *ad litem* and while the court might have appointed one it was not error not to do so.

While an argument might be made to the legislature for the requirement of appointment of a guardian *ad litem* in adoptions where one of the natural parents is deceased, one must not overlook the fact the majority of adoptions involve children born out of wedlock whose parents have voluntarily surrendered their parental rights and in such cases social agencies make a detailed investigation to determine what is in the best interest of the child. Certainly the present and future benefits to such minors as members of a family who care are of greater importance than a possible inheritance from kin who neglect to make a will.

Lastly, the appellant argues, if we understand his argument correctly, that if the effect of the adoption is to cut off the right of the grandchildren to inherit by the law of descent and distribution from their natural grandfather, the adoption is invalid to that extent because the grandfather has a natural right to have his property pass in the manner prescribed by the law of descent and distribution. In advancing this argument the appellant does not recognize that sec. 48.92, Stats., can modify or effect the law of descent and distribution or that the law of descent and distribution is of legislative origin and subject to change.

The right of a person to transfer his property on death to whom he wishes is not enshrined in the law of descent and distribution in any form but rather in the right to make a will. It is only upon the failure to exercise this right that the law of descent and distribution becomes applicable. But no vested right exists in any contemporary form of the law of descent and distribution. If this were not true, we would be living under the rule of primogeniture.

*By the Court.*—Order affirmed.