491 P.2d 528

**In the Matter of the ESTATE of David S. SHEHADY, Deceased.**
**Imogene SHEHADY, Appellant,**

v.

**Myrna Louise RICHARDS, now Myrna Louise Wolf, and David Richards, Appellees.**

**No. 9270.**

Supreme Court of New Mexico.

Dec. 6, 1971.

———◆———

McCormick, Paine, Feezer & Forbes, Carlsbad, for appellant.

Jerome D. Matkins, W. T. Martin, Jr., Carlsbad, for appellees.

## OPINION

OMAN, Justice.

This cause is before us on a stipulation of facts, which are consistent with the findings made by the trial court, and a stipulation as to the issue to be determined by us on this appeal. This issue is:

"Whether or not the adoption of David Richards and Myrna Louise [Richards] Wolf by W. D. Richards prohibits them [David and Myrna] from inheriting from the decedent who was their natural father."

The trial court ruled the adoption did not prohibit them from inheriting from decedent, and they are entitled to share in decedent's estate according to the New Mexico laws of descent and distribution. We reverse.

Briefly the pertinent facts are:

(1) Decedent was first married to Elizabeth on November 29, 1928. This marriage was terminated by divorce on February 18, 1933.

(2) From this marriage Myrna was born on September 23, 1929, and David was born on April 8, 1931.

(3) Subsequent to the divorce of Elizabeth from decedent, she married Richards.

(4) On June 10, 1942, Myrna and David were adopted by Richards and given his name. Richards was joined in the adoption proceedings by his wife, Elizabeth, the natural mother of Myrna and David.

(5) Decedent and Imogene were married on January 11, 1966, and no children were born of this marriage.

(6) Decedent died intestate on July 16, 1970. He had no heirs by adoption.

(7) Imogene, his surviving widow, claims to be decedent's sole heir at law and entitled to his entire estate.

(8) Myrna and David claim to be heirs of decedent and entitled to an interest in decedent's estate under the New Mexico laws of descent and distribution.

The resolution of the issue presented depends very largely upon the meaning and effect of §§ 22–2–10, 22–2–19 [Repealed in 1971] and 29–1–17, N.M.S.A. 1953. These sections of our statutes provide:

"*22–2–10. Effect of final adoption decree.*—A final decree in adoption granted under this act [22–2–1 to 22–2–12] *shall divest the parents* and guardians of the person *of the child of all legal rights and obligations in respect to the child, and the child shall be free from all obligations in respect to them, and such child shall be, from and after the entry of such decree, to all intents and purposes, the child of the person or persons adopting it as if*

*born to him or them in lawful wedlock,* except that, in a stepparent adoption, *the rights and relationship between the child and the natural parent married to the petitioner remain unchanged by the adoption.*" [Emphasis added]

"*22–2–19. Name taken by adopted person—Rights of inheritance.*—Upon the granting of the adoption, the adult person shall take the family name of the person adopting and *shall be entitled to all the rights, including the right to inherit as now provided by law, of a natural child of such adopting person.*" [Emphasis added]

"*29–1–17. Inheritance by and from adopted child.*—Whenever a child has been legally adopted, such child shall inherit from the adopting parents, and each of them, and the adopting parents and each or either of them shall inherit from the adopted child, *to the same extent as if he were a natural child of the adopting parents. For all inheritance purposes without exception the adopted child shall be considered a natural child of the adopting parents* and in the event of the death of such adopted child, his estate shall ascend, descend and be distributed as is otherwise provided by law for natural born children of the same family, *all to the exclusion of the natural or blood parents of such child,* Provided, however, where one [1] of the natural parents be united in bonds of matrimony to the other adopting parent *then in such event the rules of inheritance as above set out shall attach as if said child were the natural child of both such parents.*" [Emphasis added]

It is the public policy in New Mexico, as demonstrated by the foregoing provisions of our statutes and as announced by this court in Delaney v. First National Bank in Albuquerque, 73 N.M. 192, 386 P.2d 711 (1963), " * * * to treat adopted children the same as natural children. * * * " This policy is consistent with the developing trend to treat an adopted child as the natural child of the adopting parents and the family of those parents, and to terminate in every respect, when considering legal rights and obligations, the relationship with the child's natural parents. In re Silberman's Will, 23 N.Y.2d 98, 295 N.Y.S. 2d 478, 242 N.E.2d 736 (1968); In re Estate of Wiltermood, 78 Wash.2d 238, 472 P.2d 536 (1970); In re Estate of Russell, 17 Cal.App.3d 758, 95 Cal.Rptr. 88 (1971); People v. Estate of Murphy, 481 P.2d 420 (Colo.App.1971); Weitzel v. Weitzel, 16 Ohio Misc. 105, 239 N.E.2d 263 (1968); In re Estate of Jalo, 474 P.2d 355 (Or.App. 1970); Epstein, Inheritance Rights of an Adopted Child in Texas, 6 Houston L.Rev. 350, 354 (1968); Halbach, The Rights of Adopted Children Under Class Gifts, 50 Iowa L.Rev. 971, 974 (1965).

The Supreme Court of Wisconsin in In re Estate of Topel, 32 Wis.2d 223, 145 N.W. 2d 162 (1966), was confronted with the identical issue here raised, except the decedent was the natural paternal grandfather of the adopted children rather than the natural father. The statute there involved provided:

"*48.92. Effect of adoption.* (1) After the order of adoption is entered the relation of parent and child and all the rights, duties and other legal consequences of the natural relation of child and parent shall thereafter exist between the adopted person and the adoptive parents. The adopted person shall be entitled to inherit real and personal property from and through the adoptive parents in accordance with the statutes of descent and distribution, and the adoptive parents shall be entitled to inherit real and personal property from and through the adopted person in accordance with said statutes.

"(2) After the order of adoption is entered the relationship of parent and child between the adopted person and his natural parents, unless the natural parent· is the spouse of the adoptive parent, shall be completely altered and

all the rights, duties and other legal consequences of the relationship shall cease to exist."

In neither the Wisconsin statutes nor in our statutes is there an express provision that an adopted child shall not succeed to or inherit from the estate of his natural parent or relative of the natural parent. There are differences in the language of the statutes, but in both there are express references to, or language to the effect that, an adoption effects changes in the legal status of the parties to the extent that the adopted child shall become the child of the adopting parent or parents the same as if born to him or them in lawful wedlock, and that for all inheritance purposes, without exception, the adopted child shall be considered as the child of the adopting parents.

In holding an adoption under the Wisconsin statute destroyed or terminated the grandchildren's status as "lawful issue of any deceased child," the Wisconsin Supreme Court stated in part:

"Modern adoption statutes generally establish a status, the incidents of which are in the nature of a natural relationship of parent and child. 2 Am.Jur.(2d), Adoption, p. 941, sec. 100. There is no exception in the present statute to this complete substitution of adoptive relationship for the natural relationship. We think the intent of sec. 48.92, Stats., from its language is to effect upon adoption a complete substitution of rights, duties, and other legal consequences of the natural relation of child and parent and kin with those same rights, duties, and legal consequences between the adopted person and the adoptive parents and kin."

" *  *  *  *  *  *

"The legislative policy evidenced by sec. 48.92 is a change in thinking from the older view that adoption was only a type of contractual affiliation between the parties and that while the adoptive parents could make for themselves an heir by adoption, they could not by that means make one for their kindred. This view is expressed in the Estate of Boyle (1955), 271 Wis. 323, 329, 73 N.W.2d 425, 428; Estate of Bradley (1925), 185 Wis. 393, 396, 201 N.W. 973, 974, 38 A.L.R. 1; Estate of Uihlein (1955), 269 Wis. 170, 176, 68 N.W.2d 816, 820. The public attitude toward adoption and its acceptance has greatly changed in recent years. The philosophy of present adoption statutes of this state is best expressed by an anonymous poem entitled, The Adoptive Mother's Answer:

"Not flesh of my flesh
Not bone of my bone
But still miraculously
My own.
Never forget
For a single minute—
You didn't grow under my heart
But in it."

In Wailes v. Curators of Central College, 363 Mo. 932, 254 S.W.2d 645, 37 A.L.R.2d 326 (1953), the principal question presented was whether a person legally adopted " *  *  * may inherit from the natural parents, or, as in this case, from the natural grandparents." The resolution of this question was dependent upon the construction of a section of the Missouri statutes dealing with the consequences of adoption. This section of the statute is quoted in the court's opinion but is not here quoted because of its length. However, again there was no express provision therein that an adoptive child should not succeed to or inherit from the estate of his natural parent or relative of the natural parent. There were provisions expressly providing that the status of the adopted child was the same as though born to the adopting parent and that all legal relationships and all rights and duties between the adopted child and his natural parents ceased and determined. Again the language of our statutes, as quoted above, is different, but the intent and effect thereof are the same.

In holding that adopted children may not inherit from their natural parents, or their natural grandfather, the Supreme Court of Missouri stated in part as follows:

"It seems to us that the legislature by the above section [the quoted section from the Missouri statutes] has provided that when a person is legally adopted under the provisions of the adoption law, all ties of such adopted person with the natural parents and kin are completely severed. * * *"

" * * * * * *

"If an adopted child inherits from his natural parent as well as from his adoptive parent then there is a dual inheritance. This court in the Palms [Mississippi Valley Trust Co. v. Palms, 360 Mo. 610, 229 S.W.2d 675] case, supra, said, 229 S.W.2d loc. cit. 681 (12): 'It is no part of the public policy of the state that adoption should operate as an instrumentality for dual inheritance, with resulting animosity and litigation among those whom a testator provided in his will should share with equality and per stirpes. And the denial of dual inheritance under these circumstances is not opposed to the public policy of promoting the welfare of adopted children.' That statement was made as applying to the children in that case where the children claimed dual inheritance from their natural grandfather. However, the principle there expressed also applies where an adopted child claims the right to inherit from both the adoptive and natural parent. * * *"

We agree with the reasoning of the Wisconsin and Missouri courts, which is in accord with the express and clearly implied meanings of our statutes and with the public policy of our state as declared in our statutes and by this court in Delaney v. First National Bank in Albuquerque, supra.

The Decree of Determination of Heirship should be reversed and the cause re-manded for the entry of a decree determining that Myrna and David are not heirs at law of decedent.

It is so ordered.

COMPTON, C. J. and McMANUS, J., concur.