No. 875          December 4, 2024          579

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Estate of
William Jeffrey Pettis, deceased.

Sarah MILLER,
*Appellant,*

*v.*

Will J. PETTIS,
aka William Jeffrey Pettis,
*Respondent,*

*and*

Amy BOSWORTH,
*Petitioner.*

Clackamas County Circuit Court
21PB07914; A181975

Cody M. Weston, Judge.

Argued and submitted April 3, 2024.

David R. Nepom argued the cause and filed the briefs for appellant.

Brooks F. Cooper argued the cause for respondent. Also on the brief was Matthew Whitman.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Landau, Senior Judge.*

LANDAU, S. J.

Affirmed.

_____

* Landau, S. J., *vice* Jacquot, J.

**LANDAU, S. J.**

In this probate case, petitioner appeals a limited judgment denying her claim to be an intestate heir of her birth father because of her previous adoption by her stepfather. Petitioner argues that she is subject to a statutory exception from the general rule that adoption terminates the legal relationship with the birth parent and that the trial court erred in failing to recognize the applicability of that exception.

We conclude that the trial court was correct and affirm.

## I.   BACKGROUND

The relevant facts are few and undisputed. William Pettis and Doris Howder are the birth parents of petitioner, born in 1980. Pettis was the father of two other children as well. Sometime after petitioner's birth, Howder married David Cushman. In 1984, Pettis executed a consent to adoption form declaring that petitioner "becomes the child and heir at law of the adopting parents, and I cease to have any rights to her." A judgment of adoption was entered, by which Cushman became petitioner's adoptive father.

In 2021 Pettis died intestate. A petition for probate of an intestate estate was filed, listing two of Pettis's children as the heirs. Petitioner was not listed. She filed a petition to establish herself as an heir of the estate.

Respondent, the personal representative of the estate, moved for summary judgment on petitioner's claim. Respondent argued that long before Pettis died, petitioner had been adopted by Cushman, and under well-settled statutory and case law, the effect of that adoption was to make petitioner the child of Cushman, not Pettis.

Petitioner cross-moved for summary judgment, arguing that, although what respondent described ordinarily may be the effect of adoption, in this case, her claim is subject to a statutory exception from that general rule. She claimed support for that contention in ORS 112.175(2)(b), which provides that, "[i]f a parent of a person dies, and the other person marries *** and the person is adopted by a stepparent *** the adopted person shall continue also to be

treated, for all purposes of intestate succession, as the child of the deceased parent." She argued that statute applies because her birth parent Pettis died, her mother remarried, and she was later adopted by Cushman, her mother's husband.

Respondent countered that ORS 112.175(2)(b) applies only when those three events happen *in sequence*—that is, first, the birth parent dies; then the other parent remarries; and then the person is adopted by a stepparent. According to respondent, the effect of the statute is thus to preserve the inheritance rights of the child of the birth parent that existed when that parent died, not to revive a parent-child relationship decades after it was terminated by an adoption.

The trial court granted respondent's summary judgment motion, denied petitioner's motion, and entered a limited judgment denying petitioner's claim.

On appeal, petitioner reprises her argument that her claim is subject to a statutory exception to the normal rule that adoption terminates the relationship between an adoptee and the birth parent relinquishing parental rights. She argues that a "plain reading" of ORS 112.175(2)(b) supports her contention that the statute includes no temporal sequence. She argues that the legislative history of the statute confirms that reading of the statute. According to petitioner, the Oregon legislature adopted ORS 112.175(2)(b) in 1969, borrowing its wording from a Wisconsin statute. She notes that the commentary to the new Oregon law explains that the Wisconsin version was adopted in response to a decision of the Wisconsin Supreme Court, *In re Estate of Topel*, 32 Wis 2d 223, 145 NW2d 162 (1966), which adhered to the general rule that adoption precludes any intestate inheritance by the adopted child from the birth parent, and the Wisconsin legislation was intended to "overrule" that case. Petitioner claims further support from more recent amendments to ORS 112.175(2)(b). She argues that, while the original version of the statute provided that the person who satisfies the three statutory conditions will inherit "through" the deceased birth parent, as revised in 2015 the statute now provides that the person will inherit "as the child of

the deceased parent." Petitioner contends that the wording change "expanded" the rights of the adopted person.

Respondent argues that petitioner's reading of ORS 112.175(2)(b) ignores the wording of the statute, disregards the relevant context, and misreads the legislative history. As respondent sees it, the statute sets out three conditions that must occur in sequence. He notes that the statute says, if those three conditions are met, the adopted person will "continue" to be treated as a child of the deceased parent, clearly referring to an ongoing status. According to respondent, petitioner's reading of the statute would result in the adopted child becoming the child of the adoptive parent and then, years or decades later, reverting back to being the child of the birth parent, which cannot be squared with the wording of the statute. As for legislative history, respondent argues that petitioner misapprehends the significance of the Wisconsin law that served as the model for ORS 112.175(2) (b) and reads far too much into some minor wording changes adopted by the Oregon legislature in 2015.

## II.   DISCUSSION

The issue raised by the parties is thus one of statutory interpretation, governed by the principles set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Our task is to determine the meaning of the statute as most likely intended by the legislature that adopted it, taking into account the text in context, along with relevant legislative history and rules of construction. *Id*.

We begin with a bit of context. In Oregon, adoption and its consequences are governed by statute. ORS 109.041(1) provides:

"The effect of a judgment of adoption *** shall be that the relationship, rights and obligations between an adopted person and the descendants of the adopted person and

"(a)   The adoptive parents of the adopted person, their descendants and kindred, and

"(b)   The natural parents of the adopted person, their descendants and kindred

"shall be the same as to all legal intents and purposes after the entry of such judgment *as if the adopted person had been born in lawful wedlock to the adoptive parents and had not been born to the natural parents*."

(Emphasis added). ORS 109.050 similarly provides that "[a]n adopted child bears the same relation to adoptive parents and their kindred in every respect pertaining to the relation of parent and child as the adopted child would if the adopted child were the natural child of such parents."

The effect of adoption, then, is to terminate the relationship between the birth parent and the child, as if it had never happened. Thus, for example, in *Dept. of Rev. v. Martin*, 3 Or App 594, 595, 474 P2d 355 (1970), a woman placed her birth daughter for adoption. Years later, when the birth mother died, she left a substantial bequest to her birth daughter. *Id.* When the Department of Revenue proposed to tax the devised inheritance, the daughter argued that she was entitled to be taxed at a lower rate for the "child" of the deceased. *Id.* This court concluded that the daughter was not entitled to the lower rate because she was no longer the "child" of the deceased: "An adopted child cannot inherit under the laws of descent and distribution from or through its natural parents." *Id.* at 599; *see also First Nat'l Bank v. Schwerin*, 54 Or App 460, 463, 635 P2d 388 (1981) (same).

With that in mind, we turn to the statutes governing intestate succession. Those statutes begin by declaring that, subject to two exceptions not pertinent here, "the relationships existing at the time of the death of the decedent govern the passing of the decedent's estate." ORS 112.077(2).[1] Following that, the intestate succession statutes recite the general principle that, upon adoption, the adopted child ceases to be the child of the birth parent who gives

---

[1] Those two exceptions are first, that "[a] person conceived before the death of the decedent and born alive thereafter inherits as though the person was a child of the decedent and alive at the time of the death of the decedent," ORS 112.077(3); and second, that "[a] child conceived from the genetic material of a decedent who died before the transfer of the decedent's genetic material into a person's body" is entitled to an interest in the decedent's estate only if "the decedent's will or trust provided for posthumously conceived children," the decedent gave written notice to the estate that such genetic material is available for such purposes, and the child conceived from the decedent's genetic material is "in utero within two years after the date of the decedent's death," ORS 112.077(4).

the child up for adoption. *See* ORS 112.175. Subsection (1) of ORS 112.175 provides that "[a]n adopted person *** shall take by intestate succession from the adoptive parents *** as though the adopted person were the biological child of the adoptive parents."

The statute then spells out two exceptions to that general rule:

"(a)   If a person is adopted by a stepparent or domestic partner of a parent *** the adopted person shall continue also to be treated, for all purposes of intestate succession, as the child of the parent who is the spouse of, or other domestic partner [of] *** the adoptive parent.

"(b)   If a parent of a person dies, and the other parent of the person marries or enters into a domestic partnership *** and the person is adopted by a stepparent or the other domestic partner, the adopted person shall continue to also to be treated, for all purposes of intestate succession, as the child of the deceased parent."

ORS 112.175(2). The second of those exceptions is the one at issue in this case. It applies if three conditions have been satisfied: (1) one parent of a person dies; (2) the other parent remarries or enters into a domestic partnership; and (3) the person is adopted by the stepparent or the new domestic partner. In such cases, the adopted person will "continue also" to be treated as the child of the deceased parent for intestate succession purposes. The question for us is whether those three conditions must occur in sequence.

The three events are listed in the statute in a particular order. But if the listing of those events in a particular order implies a particular sequence, the inference is a weak one. More significant is the fact that the statute says that, upon the occurrence of those three conditions the adopted child shall "continue" to be treated as the child of the decedent. Ordinarily, the use of the word "continue" suggests an uninterrupted state of affairs. *Webster's* defines the term as "to be steadfast or constant in a course or activity: keep up or maintain especially without interruption a particular condition, course, or series of actions *** to keep going: maintain a course, direction, or progress *** to be permanent or durable." *Webster's Third New Int'l Dictionary* 493

(unabridged ed 2002). Thus, the statute contemplates that, at the time of the death of the birth parent, the child is the intestate heir. If the other parent later remarries and the stepparent adopts the child, that child's status as intestate heir "continues" uninterrupted.

There is an alternate sense in which "continue" is used to mean "to proceed to discourse especially after intermission." *Id*. Thus, for instance, it could be said that "we will continue this discussion next week." But that sense does not seem applicable here. To begin with, there is no "discourse" involved in ORS 112.175(2)(b). The statute instead, refers to a status or condition, *viz*., the relationship between an adopted child and the deceased birth parent. Aside from that, the immediate context—the other exception, in ORS 112.175(2)(a)—suggests the use of the word "continue" in its ordinary, uninterrupted sense. That exception applies when both birth parents are still alive, one of them remarries, and then the stepparent adopts the child. In that situation, the child "continues" to be the child of the birth parent who remarried. The word "continues" there readily connotes an uninterrupted state of affairs. Then, in the next section, upon the satisfaction of the three listed conditions, the adopted child "continues also"—that is, "continues" in the same sense—to be the child of the birth parent.

Moreover, reading the word "continues" in ORS 112.175(2)(b) in its ordinary sense is consistent with other relevant context, in particular, ORS 112.077(2). Recall that ORS 112.077(2) provides that, subject to two exceptions not applicable here, "the relationships existing at the time of the death of the decedent govern the passing of the decedent's estate." If the conditions in ORS 112.175(2)(b)—first, the death of the birth parent, then remarriage of the other parent, followed by adoption by the stepparent—are read to be sequential, then the child's status as the intestate heir of the birth parent "continues" in the ordinary sense of the term, that is, uninterrupted. And the status of the child as the intestate heir of the deceased birth parent is what it was at the time that parent died, as required by ORS 112.077(2). All the relevant statutes work together.

That is not so under petitioner's reading of ORS 112.175(2)(b). If, as petitioner suggests, the sequence of events in ORS 112.175(2)(b) does not matter, then a birth parent could first place a child for adoption by a stepparent. At that time, the child would cease to be the child of that birth parent, as provided in ORS 109.041(1). Then years later, when the birth parent who placed the child for adoption dies, the child's status as the child of that birth parent would be restored by operation of ORS 112.175(2)(b). Arguably, in such a case, the child would "continue" to be a child of the birth parent for intestate succession purposes in that alternative sense that we have identified. But the problem is that, in such a case, the child's status would not be determined at the time of the birth parent's death, as ORS 112.077(2) requires. As we have just noted, at the time of the birth parent's death, the adopted child is the child of the stepparent. Rather, the child's status as an intestate heir would solely be a function of ORS 112.175(2)(b).

ORS 112.077(2) is subject to two—and only two—exceptions, neither of which applies here. For petitioner to prevail in this case, we would have to construe ORS 112.175(2)(b) to be, in effect, a third exception to the rule that the time of a decedent's death governs the passing of that person's estate. Generally speaking, when the legislature has enumerated exceptions to a statute, courts are disinclined to add more of them. *See, e.g.*, *Crimson Trace Corp. v. Davis Wright Tremaine LLP*, 355 Or 476, 497-501, 326 P3d 1181 (2014) (declining to recognize additional exceptions to those listed in statute); *Wheaton v. Kulongoski,* 209 Or App 355, 363, 147 P3d 1163 (2006) ("[W]e are not at liberty to refine the statute by adding a qualification that is not there.").

The legislative history confirms what we have concluded that the reading of the text suggests. What is now ORS 112.175(2) was originally enacted by the Oregon Legislative Assembly in 1969, as part of a larger revision to Oregon's probate code. Or Laws 1969, ch 591, § 33. An advisory committee prepared comments explaining various proposed changes to Oregon's existing probate laws. The explanation for the proposal that was ultimately enacted as ORS 112.175 is as follows:

　　　"[The amendment] broadens the coverage of rights of inheritance, although following the basic rule of the Oregon statute that inheritance rights are derived from the adoptive parents rather than the natural parents. \* \* \*

　　　"The section has two exceptions to the general rule. First, subsection (2)(a) preserves the relationship to the natural parent in the limited situation where a natural parent marries or remarries, and the child is adopted by the stepparent. This exception is consistent with the result reached by the Oregon Supreme Court in *Hood v. Hatfield*, 235 Or 38, 383 P2d 1021 (1963), commented upon in 43 Or. L. Rev. 88 (1963).[2] The second exception in subsection (2)(b) meets the situation which arose in *In re Estate of Topel*, 145 NW 2d 162 (Wis 1966). In that case the decedent had died intestate, survived by three children of his deceased son. Their mother had remarried, and her husband had adopted the children. It was held that the former Wisconsin statute precluded inheritance by the children. The wording of subsection (2)(b) is adopted from section 851.51(2)(b), Wisconsin Probate Code."

*Administering Oregon Estates Handbook*, Advisory Committee Comments on 1969 Probate Code, Part IX, Art II, part 3 (OSB CLE 1970).[3]

　　　　In the Wisconsin case, one Simon Topel was the birth father of three children. *Topel*, 32 Wis 2d at 224. He died. Four years later, his wife remarried, and her new husband adopted the three children. Several years after that, Simon's father died intestate. The question was whether the adopted children of Simon Topel were intestate heirs of Simon's father's estate. *Id*. The Wisconsin Supreme Court concluded that they were not, because "the effect of adoption

---

　　[2] In *Hood*, the petitioner-mother gave birth to a son. The mother then married, and her husband adopted the son. Later, the mother and her husband divorced. Some decades after that, the son died intestate. The mother claimed to be the sole intestate heir. The adoptive father claimed to be an heir as well. The Supreme Court held that they were both intestate heirs of the son's estate. 235 Or at 44.

　　[3] We cite, as provided by the parties, a version of the Advisory Committee Comments that was edited slightly after enactment of the amendment for clarity and publication as part of an educational text prepared for the Bar. The text is materially consistent with prior drafts of the Advisory Committee Comments available to the legislature pre-enactment. *See* Commentary to Advisory Committee on Probate Law Revision Changes in Proposed Oregon Probate Code, Preliminary Draft § 30, 30-31 (Dec 1968).

is to make the adopted person the lawful descendant of the adoptive parents and to terminate that status of the natural parents." *Id.* at 227.[4]

Petitioner insists that the reference to *Topel* in the legislative history shows that the Oregon legislature intended ORS 112.175(2)(b) to broadly depart from the ordinary rule that adoption terminates the relationship between the birth parent and the adopted child. Nothing in the legislative history suggests that, however. Rather, it makes clear that it was intended to meet the "situation that arose" in *Topel*. That "situation" consisted of a sequence of events: (1) a birth parent died; (2) that parent's spouse remarried; and (3) the stepparent adopted the children. That sequence of events in *Topel* is what informs our determination of what the Oregon Legislative Assembly intended when it adopted what is now ORS 112.175(2)(b).

It is perhaps worth noting that this focus on the sequence of events is also the way that the Wisconsin Supreme Court has construed the Wisconsin law on which ORS 112.175(2)(b) is based. In *Matter of C.G.F*, 168 Wis 2d 62, 70, 483 NW2d 803 (1992), the court explained that the 1969 Wisconsin law was adopted as "an exception that is available only to a very limited class of persons, those children whose natural parent has died and who *subsequently* have been adopted by a stepparent." (Emphasis added.)[5]

Of course, given that the Wisconsin court's decision in that case post-dated the Oregon Legislative Assembly's enactment of ORS 112.175(2)(b), it is not controlling. *State v. Guzman/Heckler*, 366 Or 18, 29, 455 P3d 485 (2019) (When statutory wording is borrowed from another state, we "accord a special status to prior interpretations by the highest court of the relevant jurisdiction."). Nevertheless, it may

---

[4] Interestingly, by the time *Topel* reached the Wisconsin Supreme Court, an amendment to the Wisconsin Probate Code had been drafted, which the court noted "would allow inheritance on the instant facts." *Topel*, 32 Wis 2d at 227 n 2. That draft amendment was eventually adopted by the Wisconsin Legislature and became the source of what is now ORS 112.175(2)(b).

[5] In 2005, the Wisconsin Legislature amended the 1969 law to state expressly that it applies when one birth parent dies and the other "subsequently" remarries. Wisconsin 2005 Act 216 § 155. But the version of the statute that the Wisconsin Supreme Court construed in *Matter of C.G.F.* did not include that amendment and was instead in the form that mirrors Oregon's law.

be regarded as persuasive evidence of the intended meaning of the law. *State v. Walker*, 356 Or 4, 24, 333 P3d 316 (2014) (post-enactment cases from other jurisdictions "still may be consulted for their persuasive value"); *OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 593, 341 P3d 701 (2014) (same).

That leaves petitioner's reliance on wording changes to ORS 112.175(2)(b) in 2015. Before 2015, that law provided:

"(b)   If a natural parent of a person dies, the other natural parent remarries and the person is adopted by the stepparent, the adopted person shall continue also to be treated, for all purposes of intestate succession by any person through the deceased natural parent, as the child of the deceased natural parent."

ORS 112.175(2)(b) (2013). In 2015 the legislature adopted amendments to that law (with deleted material italicized and in brackets and new material in boldface):

"(b)   If a [*natural*] parent of a person dies, [*the other natural parent remarries*] **and the other parent of the person marries or enters into a domestic partnership registered under ORS 106.300 to 106.340 or under a similar law in another state,** and the person is adopted by [*the*] **a** stepparent **or the other domestic partner**, the adopted person shall continue also to be treated, for all purposes of intestate succession [*by any person through the deceased natural parent*], as the child of the deceased [*natural*] parent."

Or Laws 2015, ch 387, § 8.

Petitioner seizes on the deletion of the phrase "by any person through the deceased natural parent" as indicating that, under the current law, the adopted child who meets the other conditions of the statute is treated "as the child of the deceased parent" for intestate succession purposes. According to petitioner, that change in the law somehow confirms that it "grants the adoptee * * * additional rights as an intestate heir of her natural father."

The argument is unpersuasive. The statute grants an adopted child "additional rights" only to the extent that the conditions of the statute have been satisfied—that is, that the birth parent dies, then the other parent remarries,

and the stepparent later adopts. In advancing her argument, petitioner assumes that such a sequence is not required. But as we have just explained, that is an erroneous assumption. And nowhere does she explain how the deletion of the phrase "by any person through the deceased natural parent," by itself, eliminates the required sequence of events.

Petitioner concedes that nothing in the legislative history suggests the legislature intended such an effect by deleting the phrase from the statute. The 2015 amendments to ORS 112.175 were proposed by an Oregon Law Commission work group as part of a larger package of amendments to the probate code, intended to reflect "technological and social changes" in "the way people create families." Susan N. Gary, Oregon Law Commission, *Amendments to the Oregon Probate Code Work Group Report - SB 379-3*, § III (2015). With respect to the wording changes in ORS 112.175, all the report said was that the changes were intended to delete references to "natural" parents in favor of more "appropriate" terminology. *Id.* at § V. And from the wording of the statute, that appears to be all that the amendments accomplished.

We conclude that the trial court did not err in entering a limited judgment dismissing petitioner's claim.

Affirmed.